E-FILED
Thursday, 16 March, 2023 12:41:41 PM
Clerk, U.S. District Court, ILCD
Exhibit 1

Jerry S. Wexler, Ph.D.
Licensed Clinical Psychologist
1550 Spring Road, Ste. 215
Oak Brook, IL 60523

847-942-6612 jswexler@gmail.com

February 22, 2021

Dr. Guiyou Huang
President
Western Illinois University
Macomb, IL 61455

RE: CHRIS CESCA

Dear Dr. Huang:

I am writing to you on behalf of my patient, Chris Cesca. Chris has been a student at WIU since Fall, 2018. I have been providing individual and family psychotherapy, and coordinating psychiatric services for him since 2013.

At issue here is that Chris is requesting permission to re-take and complete courses in LEJA for which he received Fs in the pandemic spring semester of 2020. He is requesting to re-take and complete these courses without penalty.

The LEJA department has been obstinate in their response to his request, for reasons that are unclear. In contrast, the departments of Economics (his second major), Math, Sociology, and Drama have each allowed in-person re-takes and his resulting grades have been excellent.

I want to offer a clinical perspective and to support his request as reasonable and appropriate given his disability.

Chris is 34 years old with severe learning disabilities associated with Attention Deficit Disorder with Hyperactivity. Older than the average student, he is trying to complete a college education after several earlier attempts that were made prior to his receiving and understanding his diagnosis.

In my tenure as his psychologist, I have had abundant opportunities to observe and experience the severity of his chronic difficulties with executive functioning—planning, organization, attention control, time management, and self-restraint.

Consequently, learning course material, completing assignments on time, and managing his schedule with outside demands, are enormous challenges for him. In particular, he requires in-person engagement with faculty, and often tutoring, to master course material.

Remote learning for Chris is virtually impossible; he cannot be expected to teach himself complex course material. His LEJA professors have been inappropriately expecting just that.

In light of his disabilities, I am extremely pleased with the level of academic achievement he has shown at WIU, managing full-plus course loads and attending to various demands and appointments. He is determined to succeed and I believe his success so far is a result of his superior intellectual ability combined with that determination.

However, the psychological cost for him is significant in the form of anxiety and depression, which have been exacerbated by the persistent frustration of unmet learning needs. The anxiety and depression in turn impair his ability to focus and learn course material.

The services and resources that WIU had made available through the Disability Resource Center were for a time appropriate and helpful, but support from the Center has been inconsistent.

The onset of the pandemic last spring led to a total disruption of Chris' progress. The contrast between his earlier grades and his grades for the pandemic semester is striking.

We are appealing to you as the incoming president in the hope of finding a way clear for this bright but challenged student to successfully complete the problematic classes and continue progress toward graduation.

This is a potential success story, which if realized would be in everyone's interest, and something about which WIU could feel good.

What Chris is asking for is entirely consistent with his disabilities.

He is not asking for special breaks, shortcuts, or advantages.

He is not looking to cheat or get away with anything.

I think he is a good judge of what he needs to learn, and he has demonstrated his ability to perform academically, with excellence, when these needs are met.

I would hope that a university like WIU would to do whatever it could to support the particular needs of the individual student to succeed, and to remove unnecessary and extraneous obstacles that stand in his way.

Sincerely,

Larry S. Wexler, Ph.D.
Licensed Clinical Psychologist

Exhibit 2

**MEETING WITH WIU PRESIDENT DR. MARTIN ABRAHAM**

OPENING THOUGHTS

**I think the best approach to integrate the email you believe Abraham didn't fully read/comprehend/process is this:**

*Chris*:

I realize that your duties as President, especially entering into this position in such trying times for the University, are numerous and overwhelming. For this reason, I was especially careful and deliberate in crafting the original email I addressed to you, in which the subject line was "seeking help". I spent upwards of three hours sitting in a highway rest stop parking lot, in the middle of a return from St. Louis, drafting and preparing this email, so as to emphasize just how numerous & overwhelming the issues I have faced at WIU have been for me, as well.

However, after sending this laborious, desperate email to you on Monday, September 30th, at 7 o'clock in the morning, the reply I received at 8:08 in the morning felt like a worryingly brief response. I was concerned by your response, feeling that it was cursory, and not in keeping with the severity with which I feel these issues demand your attention. Now, I am able to appreciate that much can be lost in translation, and I realize my interpretation of the remarks in your email response may not be totally merited. I have also considered the possibility that, depending on what or how much information you have received about my intentions for this meeting, you may not be wholly aware of why we are here today. Therefore, I would like to begin this meeting by making one thing very clear:

THE GROSS VIOLATION OF MY FEDERALLY-PROTECTED CIVIL RIGHTS, PERPETRATED BY DOUGLAS ENDRES, AN EMPLOYEE OF WESTERN ILLINOIS UNIVERSITY, AS WELL AS THE UNIVERSITY SYSTEM AT LARGE, ON SEPTEMBER 28TH, 2019 IS ABSOLUTELY THE MOST BLATANT, BLACK & WHITE EXAMPLE OF DISCRIMINATION ON THE BASIS OF DISABILITY I'VE HERETOFORE EXPERIENCED. HOWEVER, THIS INCIDENT IS JUST ONE OF MANY EGREGIOUS AND DETRIMENTAL OBSTACLES AND IMPEDIMENTS I'VE ENDURED IN MY ENTIRE ACADEMIC TENURE AT THIS INSTITUTION.

I am not a person who opts to rest on my laurels in the face of adversity; consequently, I've attempted many times to address, manage, and resolve these obstacles myself, and I would now like to give you a brief but comprehensive list of ways in which I have proactively pursued amelioration of these matters.

To date, I have:

1.) Registered with the Disability Resource Center & fostered an integral relationship with my representatives there, in order to continue gaining a better understanding of my rights

2.) I have spoken with my advisors on how to achieve my academic goals despite pervasive opposition from many of my peers & professors in the classroom

3.) I have emphatically appealed to professors, and teaching and graduate assistants, for additional help, resource materials, & tutors **despite overwhelming resistance & opposition in response**

4.) I have spoken with peers directly and discreetly about behaviors in the classroom that hinder and thwart my learning

5.) I have sought the support of department chairs subsequent to attempting resolution at the professor level if the given professor is or has been uncooperative and unwilling to appropriately aide in my academic objectives

6.) I have solicited the counsel of Michelle Janisz, the director of the Office of Student Activities, pursuant to glaring experiences of misconduct within various student organizations

7.) I have petitioned relief from the former Vice President for Student Affairs, Ron Williams, in a meeting my parents attended, which required TWO distinct trips to Macomb, from Chicago, at their substantial expense

8.) I have initiated attempts at resolution with faculty advisors of various student organizations with which I have been involved, to negligible avail

9.) I have earnestly requested investigations by the Office of Equal Opportunity and Advancement, the spurious arbitration committee masquerading as a source of advocacy for the University's student body

10.) I have filed Freedom Of Information Act requests **that have been denied or "delayed Indefinitely", seemingly as often as they've been granted**

These self-motivated efforts are not vague generalizations that I am embellishing to prove my point. I am prepared to offer well-documented, empirical examples of each of these contentions, and one of my hopes today is to be assured I will have a chance to voice and discuss all of these grievances at an appropriate later date. At this juncture, however, I have taken every feasible measure, utilized every advocate and ally, and exhausted every resource to mitigate these issues, far and above what ANY student should ever reasonably have to do. Furthermore, each of these endeavors has proven fruitless and disappointing at best; at worst, each has been an utter waste of time, energy, and effort, as well as an exacerbaory catalyst and justification for continued harassment, retaliation, and discrimination from those involved.

My goals here today are dichotomous but simple:

1) My first objective is to prove to you, as President of a university that presumptively cannot afford any additional missteps, misgivings, or "mistakes", that there are systemic problems campus-wide regarding both of the following major concerns, that must be immediately addressed:

    a) Number one - Recognition of & respect for disabilities of all kinds, including, but not limited to: physical disabilities, psychological and intellectual disabilities, and cognitive and learning disabilities; and not solely those that are readily apparent or obvious
    b) Number two - Protocols must be promptly deployed for the proper and effective education & training of University employees to know how to appropriately handle student, staff, and faculty conflicts in general & specifically pertinent to disabilities

2) A secondary objective of mine is to conclude this meeting with a resolution that the inexcusable violations that have transpired will be acknowledged and addressed accordingly OR to depart today with the understanding that I will need to climb upward on the chain of command until satisfactory resolution and relief is achieved.

With these goals in mind, I am compelled to state that a one-hour time allotment to fully depict almost four semesters of misconduct and discord is insufficient, and it would be impossible for me to relay these issues to you with the depth and clarity they deserve. So, I understand that part of my burden today is focusing on the most fundamental concerns, while briefly communicating other bits of supplemental information, and I hope that you will recognize the substantial extent of my claims that merits your audience. I do realize you are walking into this position with an expectation from me to right wrongdoings that were not yours, and I can understand why that may be challenging. However, while I *am* seeking justice for myself, I

consider this to be a glowing opportunity for the University to strategize and determine how to not merely satisfactorily serve those with disabilities in the future, but to serve as a prominent institution for those of us approaching this environment from a place of profound disadvantage.

As you know, the catalyst for today's meeting is the reprehensible incident perpetrated by the employees and Dean of Malpass library and OPS. It is my stance that the primary actors in this deplorable act are those that were directly responsible for library business. The secondary actors, employees of the purported "office of public safety", although operating in a reactive capacity, were equally harmful and complicit in this traumatic incident. At the time that I understood there would be OPS presence, I fully expected the responding officers to be versed in anti-discrimination law, such that they would inform the library employees of the gravity of the latters' actions. In fact, Mr. Slater initially stated that he would not remove me from the library on the basis of utilizing a service dog. However, he and Mr. Seaver ultimately proved to be improperly trained or informed on these matters and subsequently succumbed to their own ignorance, falling in line with the multitudes of others who have acted similarly toward me at this university. I want to start here because I think this event is a salient example which demonstrates many of the grievances I've had regarding prior issues. Sadly, I think this particular incident is indicative of an overarching and ubiquitous culture at Western Illinois University, toward individuals with non-apparent disabilities.

To summarize very briefly, on Thursday, September 26th, 2019, I was accosted by Douglas Endres to the effect of him haphazardly asking, "Is that a dog?" shortly before I departed the library. Please note, he was referring to my service dog, which has been prescribed to me by a medical professional and at the time was adorned with a vest prominently reading SERVICE DOG. Two days later, **on Saturday, September 28th, 2019**, I returned to the Malpass Library with my service dog, again adorned with his identifying vest. The same employee then abruptly informed me that I was forbidden from utilizing my service dog there, per the alleged instruction of his superior. OPS was called to enforce my unlawful forcible removal, and I requested that a report be filed so this discriminatory act would be documented.

**{As long as it does not come across as condescending, this may be the appropriate time to ask if you need to clarify why this is a problem. Every minute counts here, so you don't want to waste time convincing him this was a violation of your civil rights if he is already willing to concede that.}**

*Chris*:

I have provided you with resource materials, annotated for your reference, that indicate the following:

1) First, service dogs are not required by law to be adorned in any particular way so as to be identified as service dogs. Frankly, my motivation for using the identifiers I do stems largely from a desire to eschew harassment, ironically.

2) Second, disabled persons are not required by law to divulge or prove their disability.

3) Third, disabled persons are not required by law to prove the legitimacy of their service animal by presenting identifying documents, utilizing special indicia (in-di-she-uh) or equipment, and/or demonstrating their skills upon request, et cetera.

***Asking or requiring disabled persons to perform any of the above items constitutes a gross violation of federal law.***

4) Fourth, there does not exist a clear or conspicuous clause in the Western Illinois University Student Code of Conduct *or* the Western Illinois University Policy Manual requiring service animals to be conditionally registered with the DRC

5) Fifth, Malpass Library is a public building serving the whole community & thus must follow and abide by the laws which allow for the use of service animals in publicly-accessible facilities

6) Sixth, emotional support animals are bestowed with many of the same rights

    a) Now, while Ned is a trained service dog, Douglas Endres justified his discriminatory act by assuming that my dog was an emotional support animal & thereby operated under this assumption, despite my repeated categorical attempts to clarify this misinformation, which brings me to my next two points:

        i) Douglas Endres' behavior and actions here were also illegal - first, his assumpion that I do not have a physical disability that might require a service animal AND

        ii) Second, that non-apparent disabilities are insufficient cause for a service animal & should be denied protections by the ADA

Assuming consensus at this juncture that the September 28th, 2019 incident was a clear and brazen violation of my federally-protected civil rights, I'd like to avoid investing any additional time expounding upon why this is the case & instead I'd like to draw attention to the way this

matter was and has been handled, a paradigm which I feel embodies many of the core concerns I've hitherto expressed.

1) First, I'd like to discuss the milquetoast "APOLOGY"
**PRESENT THE PRINTED EMAIL FROM DR. LORENZEN NOW.**

- In this email, no one demonstrated accountability
- In this email, the deceptive, though presumably deliberate word choice suggested that something "occurred," but not that anything was necessarily done to me, by them
- I'd also like to draw your attention to the date referenced in this email. At this stage of this incident, there is absolutely no acceptable or justifiable reason for such an egregious oversight. This leads me to believe that this error was made deliberately to further shirk responsibility, or that it was the result of characteristic incompetence, or both.

2) Next, let's talk about the "CONFIRMATION GANG"

- Mr. Endres stated that he didn't believe that Ned was actually a service dog because he had "never seen you (referring to me) with a dog before"
    - ***To this end, I'd like to explicitly define two words:***
    - ***First, Prejudice, which is defined as a - "preconceived opinion that is not based on reason or actual experience"***
    - ***Next, the term Praejudicium, which means - "judgment in advance"***
- Ned's status as a service animal was questioned by 3 separate parties *subsequent* to the incident. I know this because, fortunately for me, Ms. LaFrance is not only intimately familiar with the law, but she also exhibits a standard of integrity that is beyond reproach, which arguably exalts her as a rare exception at this university. In this context, this means that Ms. LaFrance, as required by law, informed me and received my permission to disclose personal, confidential information to the three following parties. However, it is beyond my comprehension why these three individuals would be so abusive of their positions as to further prod for information I had so decisively explained. This is especially true of Ms. McCoy, who at this time had no known involvement in this incident. The other two parties, Mr. Slater of OPS, and Dr. Lorenzen, former dean of libraries, inquired in person at the DRC and over the phone, respectively, which suggests that:
    - They did not believe me, so my claims must be verified. This is also known as operating under a presumption of guilt, which is especially troubling at a University renowned for its law enforcement curricula. **Additionally, I find this intrusive questioning particularly interesting, given that one of these people works for OPS & should probably have verified this information prior to committing the unlawful act against me & another of these individuals works**

**for EOA & should already be intimately versed in the pertinent laws. Ms. McCoy has also worked with me on two other issues I've pursued through the EOA & is already distinctly aware of my disabilities and registration with the DRC. Additionally, I'd like to reiterate that the prevailing federal law does not require me to CLEAR MY SERVICE DOG WITH THE DRC TO UTILIZE HIM ON CAMPUS. Employees of this university working in such fields as law enforcement, and Equal Opportunity & Access, should be unequivocally familiar with the relevant laws, and should not be grasping at straws, looking for loopholes to find me at fault for their misconduct and incompetence**

- **Incidentally, whether Ned is or is not a service dog & whether he is or is not registered with the DRC makes a difference here - this registration indicates that the offending parties know** **There is a reason for concern if Ned really is a service dog** **Therefore, they verified his status as a service animal & inadvertently confirmed their horrendous error, though, to date, no one has taken responsibility for it.**

3) Next , I'd like to mention the "RUNAROUND"
**THIS IS WHERE YOU INCLUDE DOCUMENTATION OF YOUR FOIA REQUESTS & WHEN, ANY RESPONSE CONFIRMING OR DENYING THE REQUEST**

- FOIA requests for two separate incident reports have now been withheld/not produced in an appropriate or reasonable amount of time
- Further, my appeals for a meeting were not prioritized & addressed in a timely fashion as I was promised

**THIS IS WHERE YOU MAY CALL OUT THE PRESIDENT, BUT IT IS OF PARAMOUNT IMPORTANCE YOU DO SO ****TACTFULLY*****

*Chris*:

At this point, I would like to clarify why some of my direct communications with you may have caused some friction. In your second emailed response to my original email to you, and the first of your responses to this ongoing concern that specified a date or window of time for response, dated **Tuesday, October 1st, 2019,** you indicated I would hear from you by **"the end of the week", which would have been Friday, October 4th, 2019. **ALL THIS DOCUMENTATION MUST BE COPIED & ANNOTATED***** When I had not heard from you by Monday October 7th, 2019, I expressed my frustration in an email sent to you titled simply, "concerns". You responded to this email promptly, on the same day, accepted blame and

responsibility for the delay, and stated, this time more explicitly, that I was to expect a response to my original email to you "on Wednesday", referring to Wednesday, October 9th, 2019. As Wednesday, October 9th, 2019, passed by, I anxiously checked my email for some modicum of response. I checked throughout the day. I checked at 5 o'clock pm. I checked at 5:01 pm. I checked at 5:05 pm. I checked at 11:59 pm. Nothing. I did not hear from *anyone* at all on the day that you had committed I would receive a response. It was this failure that solidified my fear that I could not even trust you, which I assure you was truly heartbreaking. Then, as if to add insult to injury, I received a completely unacceptable email from Dr. Lorenzen the following day, Thursday, October 10th, in which he offered a lackluster, insincere, reluctant and ambiguous "apology", *twelve days* after the initial incident. In fact, this email was so ambiguous, that it *literally contained a starkly erroneous date* when referring to the incident at Malpass library. This was a tremendous oversight, whether deliberate or incomptent, and I will not accept that it is to be justified as an innocuous mistake. After I responded to Dr. Lorenzen's email, in which I carbon copied you, I drafted a separate email to you alone, dated October 11th, 2019, titled "meeting". In this email, I expressed one final time the degree to which my faith and trust in both you and the university had been summarily decimated, before again requesting a meeting, which has finally come to fruition today. What I had hoped for was a simple agreement to meet. Instead, what I received was a response in which you stated, "Chris, I am sorry about the error in the date in the email, about my inability to respond to you ***as promptly as you believe I should***, and also that you believe the "apology" was insufficient."

Truly, with all due respect, in terms of my expectations of others on the basis of their commitments, I have not acted in the capacity of that in which "I believe," but rather on the basis of that which was expressly communicated to me. My expectations are determined by the promises made to me and the integrity an individual demonstrates by keeping them or not. It is incredibly unfortunate that I have experienced such a tremendous degree of disappointment thus far at this university, regarding the integrity, or lack thereof, that has been demonstrated by students, professors, and administration alike. It is even more disappointing that I have sought reprieve and respite from faculty and administrators at every juncture to address these issues that so deeply affect me, yet I've received the same empty promises, characteristic inaction, and absence of urgency across the board. So, at the risk of totally alienating one of the last possible sources of relief I may have within the confines of the University itself, I have to be unapologetically honest in communicating that my concerns were never that you did not meet my expectations. It's that you absolutely met my expectations that have come to be so shamefully paltry by way of the intrinsic culture that has been set by this university to date.

I could never expect anyone stepping into your position, as you have, to fully grasp the gravity of my experiences here from a couple of exchanged emails. I am confident, if you've sought any information about me from others, it is likely that there are individuals who may not

have a favorable impression of me. These are unfortunate consequences of what I believe to be a deeply ingrained, systemic problem. What I really hope to achieve today is to communicate that my disappointing, and, in some cases, traumatizing experiences have been numerous and steadily compounding since my first semester here at WIU. Furthermore, this falls drastically short of how I had hoped to feel upon my return to a collegiate setting this late in life, especially considering the academic success I have had, certainly despite the majority of influences I have encountered here. I should be feeling proud and accomplished; I should not be feeling as though I've just barely managed to eke out some small victories among tremendous obstacles. No matter how anyone might feel about me personally, any educator who claims to value the successes of their students should feel saddened and ashamed that this has been the experience of even one single student.

Moreover, in preparing for this meeting, I have recently learned that roughly 10% of the collegiate student body at this school struggles with at least one documented learning disability. I think it is safe to assume, as with many other such measures, that this number is likely much larger if you consider all the students who were like me at 20 years old, with not so much as a suspicion of a present disability, undiagnosed or otherwise; or worse, those who know but are too afraid of the very things I've been experiencing to come forward and take advantage of resources that might benefit them. It follows, then, that my experiences are probably not unique to me, and this is where I hope to make a more significant impact than simply seeking justice for myself. In order to make that difference, I believe my experiences need to be voiced, and acknowledged, and addressed with actual, visible, meaningful action. Until these issues are heard and recognized, they cannot and will not be corrected. Until they are exposed for what they are, they cannot and will not effect any real change.

In closing, I'd like to reiterate that the incident which occurred at the library is of paramount importance, but it was the catalyst, though not the entire substance of the problem here. I am seeking resolution and relief for myself out of this meeting, and I believe that starts with an assurance that all of my complaints will be fully heard and addressed to my satisfaction. It is only when I've had the chance to fully elucidate the ways these experiences have further disadvantaged me that my requests for remuneration can be understood. If it is not readily apparent that there is sufficient cause for further investigation, I also have prepared a presentation that briefly summarizes and organizes some of my grievances. I would be amenable to present that now or to discuss further any of the contentions in my statement thus far.

4:23-cv-04043-SLD-JEH # 1-1 Filed: 03/16/23 Page 12 of 47

Exhibit 3

Law Enforcement and Justice Administration

*WIU Home* (http://www.wiu.edu/) > *COEHS* (http://www.wiu.edu/coehs/) > *LEJA* (http://www.wiu.edu/coehs/leja/)

Schedule a Visit (http://www.wiu.edu/visit/index.php)

Request Information (http://www.wiu.edu/about/request_info/index.php)

# Law Enforcement & Justice Administration, Fire Protection Services, and Emergency Management

The School of Law Enforcement and Justice Administration (LEJA) at Western Illinois University is an internationally known, top criminal justice/public safety program. The educational degree programs are specifically developed in collaboration with law enforcement, corrections, security, legal, and fire industry leaders and are taught exclusively by professionals who have worked in the specified field.

## WIU Benefits:

- More than 1,300 agencies partner with our program by accepting interns
- Receive academic education with real-world practical application and critical thinking experience. Learn by discussion, doing, and demonstrating
- All faculty come with a wide array of criminal justice/public safety expertise
- All faculty have done the job, practical experience linking theory with practice
- Diverse, academically qualified and experienced faculty
- 100% online and traditional undergraduate baccalaureate programs
- 100% online master's programs
- Minors available: Criminalistics, Homeland Security, Fire Science, Fire Administration, Emergency Management, Corrections, Law Enforcement and Justice Administration, and Legal Studies
- 2021 Best Bachelor's Degree in Law Enforcement: #3
- 2020 Best Online Bachelor's in Law Enforcement Degrees: #1
- 2020 Most Affordable Online Bachelor's Fire Science Degrees: #6



*Click here to learn more* (http://www.wiu.edu/ /coehs/leja/fifty.php)







## Professional Training Series

Public Safety Preparedness

Situational Awareness

Interactive Webinar

Click here to begin

(http://www.wiu.edu/ /coehs /leja/webinar/story_html5.html )

Corrections & Justice Administration Enhancement

Restorative Justice

Interactive Webinar

Click here to begin

(https://restorativejustice-ncjtraining.talentlms.com/catalog /info/id:140 )

## LEJA Job & Internship Placement

Internship placement map (http://www.wiu.edu/ /coehs /leja/internship_maps/)

Responding to Floods and Tornadoes Interactive Webinar
Click here to begin (http://www.wiu.edu/ /coehs /leja/weather_situational_awareness/story_html5.html )

Implicit Bias Interactive Webinar
Click here to begin (https://implicitbias-ncjtraining.talentlms.com/catalog /info/id:151 )

Careers in Criminal Justice
TBA

Internship placement list (http://www.wiu.edu/ /coehs /leja/internship_maps/Placements.php)

11/09/21 15:08:12 Western Illinois University FBR230L Page 1

History Snapshot Transaction Detail

$2,34

Exhibit 4

Account: EXT:

Name: CESCA, CHRIS

| Effect Date | Trm | Sub Code | Description | | Amount | Balance | Bill Date |
|---|---|---|---|---|---|---|---|
| 081718 | 183 | 04632 | HEALTH INSURANCE | | 842.00 | 842.00 | 09/05/18 |
| 081718 | 183 | 04761 | UNIVERSITY FEES- | SCHED T | 817.65 | 1,659.65 | 09/05/18 |
| 081718 | 183 | 13002 | TRANSCRIPT FEE | | 15.00 | 1,674.65 | 09/05/18 |
| 081718 | 183 | 13011 | ORIENTATION FEE - TRANSFER | | 50.00 | 1,724.65 | 09/05/18 |
| 081718 | 183 | 16500 | MACOMB TUITION-UG | | 2,562.30 | 4,286.95 | 09/05/18 |
| 090618 | 183 | 35110 | STUDENT PERMIT - 19B4258 | | 76.00 | 4,362.95 | 10/02/18 |
| 091118 | 183 | 34150 | BEU PROCESSING CHARGE | | 25.00 | 4,387.95 | 10/02/18 |
| 091218 | 183 | 35100 | 18200940-CITATION-090418 | | 50.00 | 4,437.95 | 10/02/18 |
| 100218 | 183 | 29793 | FINANCE CHARGE | FY19 | 42.87 | 4,480.82 | 10/02/18 |
| 110618 | 183 | 29793 | FINANCE CHARGE | FY19 | 44.81 | 4,525.63 | 11/06/18 |
| 120318 | 183 | 29793 | FINANCE CHARGE | FY19 | 45.26 | 4,570.89 | 12/03/18 |
| 030819 | 183 | 87186 | PELL GRANT CREDIT | FY19 | 2,285.00- | 2,285.89 | 04/02/19 |
| 010719 | 191 | 29793 | FINANCE CHARGE | FY19 | 45.71 | 2,331.60 | 01/07/19 |
| 011119 | 191 | 99910 | STARS/ACH PAYMENT | | 4,616.60- | 2,285.00- | 02/04/19 |
| 011419 | 191 | 04632 | HEALTH INSURANCE | | 842.00 | 1,443.00- | 02/04/19 |
| 011419 | 191 | 04761 | UNIVERSITY FEES- | SCHED T | 1,090.20 | 352.80- | 02/04/19 |
| 011419 | 191 | 16500 | MACOMB TUITION-UG | | 3,416.40 | 3,063.60 | 02/04/19 |
| 011419 | 191 | 35100 | 18200940-CITATION CRED | | 50.00- | 3,013.60 | 02/04/19 |
| 012819 | 191 | 08603 | HEALTH INSURANCE WAIVER | | 647.00- | 2,366.60 | 02/04/19 |
| 012819 | 191 | 08605 | HEALTH INSURANCE WAIVER2 | | 195.00- | 2,171.60 | 02/04/19 |
| 030119 | 191 | 99910 | STARS/ACH PAYMENT | | 4,456.60- | 2,285.00- | 03/04/19 |
| 030819 | 191 | 87186 | PELL GRANT CREDIT | FY19 | 3,048.00- | 5,333.00- | 04/02/19 |
| 031119 | 191 | 03105 | AUTOMATIC REFUND DISBURSEMENT | | 6,370.80 | 1,037.80 | 04/02/19 |
| 031119 | 191 | 88462 | DIRECT 1 SUB 1ST DISB- | SP19 | 5,442.00- | 4,404.20- | 04/02/19 |
| 031119 | 191 | 88507 | DIRECT 1 UNSUB 1ST DISB- | SP19 | 1,979.00- | 6,383.20- | 04/02/19 |
| 031119 | 191 | 88552 | DIRECT 1 USUBA 1ST DISB- | SP19 | 2,690.00- | 9,073.20- | 04/02/19 |
| 041919 | 191 | 03106 | REFUND DISBURSEMENT | | 4,404.20 | 4,669.00- | 05/06/19 |
| 041919 | 191 | 88507 | DIRECT 1 UNSUB 1ST DISB- | SP19 | 1,979.00 | 2,690.00- | 05/06/19 |
| 041919 | 191 | 88552 | DIRECT 1 USUBA 1ST DISB- | SP19 | 2,690.00 | 0.00 | 05/06/19 |
| 052119 | 192 | 04761 | UNIVERSITY FEES- | SCHED T | 349.02 | 349.02 | 06/05/19 |
| 052119 | 192 | 16500 | MACOMB TUITION-UG | | 1,708.20 | 2,057.22 | 06/05/19 |
| 052119 | 192 | 17200 | MACOMB TUIT DIST & OUTREACH-UG | | 854.10 | 2,911.32 | 06/05/19 |
| 052119 | 192 | 33934 | DISTANCE LEARNING CHARGE | | 150.00 | 3,061.32 | 06/05/19 |
| 052119 | 192 | 87163 | PELL GRANT SUMMER | FY19 | 2,286.00- | 775.32 | 06/05/19 |
| 061119 | 192 | 99910 | STARS/ACH PAYMENT | | 775.32- | 0.00 | 07/02/19 |
| 061219 | 192 | 99910 | STARS/ACH PAYMENT | | 2,286.00- | 2,286.00- | 07/02/19 |
| 062619 | 192 | 03106 | REFUND DISBURSEMENT | | 2,286.00 | 0.00 | 07/02/19 |
| 070119 | 192 | 04761 | UNIVERSITY FEES- | SCHED T | 174.51- | 174.51- | 07/02/19 |
| 070119 | 192 | 16500 | MACOMB TUITION-UG | | 854.10- | 1,028.61- | 07/02/19 |
| 070219 | 192 | 04761 | UNIVERSITY FEES- | SCHED T | 174.51 | 854.10- | 07/02/19 |
| 070219 | 192 | 16500 | MACOMB TUITION-UG | | 854.10 | 0.00 | 07/02/19 |
| 070219 | 192 | 87163 | PELL GRANT SUMMER | FY19 | 762.00 | 762.00 | 07/02/19 |
| 070819 | 192 | 87163 | PELL GRANT SUMMER | FY19 | 761.00- | 1.00 | 08/05/19 |
| 070919 | 192 | 87163 | PELL GRANT SUMMER | FY19 | 1.00- | 0.00 | 08/05/19 |
| 080119 | 193 | 04632 | HEALTH INSURANCE | | 795.00 | 795.00 | 08/05/19 |
| 080119 | 193 | 04761 | UNIVERSITY FEES- | SCHED T | 1,362.75 | 2,157.75 | 08/05/19 |
| 080119 | 193 | 16500 | MACOMB TUITION-UG | | 4,270.50 | 6,428.25 | 08/05/19 |
| 080119 | 193 | 19500 | ISAC MAP CREDIT FY20 | | 2,670.00- | 3,758.25 | 08/05/19 |
| 080119 | 193 | 87130 | PELL GRANT CREDIT FY20 | | 3,097.00- | 661.25 | 08/05/19 |
| 080519 | 193 | 08603 | HEALTH INSURANCE WAIVER | | 611.00- | 50.25 | 08/05/19 |
| 080519 | 193 | 08605 | HEALTH INSURANCE WAIVER2 | | 184.00- | 133.75- | 08/05/19 |
| 080919 | 193 | 87504 | DIRECT 1 SUB 1ST DISB- | FA19 | 2,721.00- | 2,854.75- | 09/04/19 |
| 081419 | 193 | 03105 | AUTOMATIC REFUND DISBURSEMENT | | 2,854.75 | 0.00 | 09/04/19 |
| 081619 | 193 | 03105 | AUTOMATIC REFUND DISBURSEMENT | | 592.65 | 592.65 | 09/04/19 |
| 081619 | 193 | 04761 | UNIVERSITY FEES- | SCHED T | 272.55- | 320.10 | 09/04/19 |
| 081619 | 193 | 16500 | MACOMB TUITION-UG | | 854.10- | 534.00- | 09/04/19 |
| 081619 | 193 | 19500 | ISAC MAP CREDIT FY20 | | 534.00 | 0.00 | 09/04/19 |
| 081919 | 193 | 04761 | UNIVERSITY FEES- | SCHED T | 272.55 | 272.55 | 09/04/19 |
| 081919 | 193 | 16500 | MACOMB TUITION-UG | | 854.10 | 1,126.65 | 09/04/19 |
| 081919 | 193 | 19500 | ISAC MAP CREDIT FY20 | | 534.00- | 592.65 | 09/04/19 |
| 082719 | 193 | 99910 | STARS/ACH PAYMENT | | 7,020.90- | 6,428.25- | 09/04/19 |
| 091119 | 193 | 03106 | REFUND DISBURSEMENT | | 6,428.25 | 0.00 | 10/01/19 |
| 100719 | 193 | 35100 | 19700370-CITATION-092719 | | 5.00 | 5.00 | 11/06/19 |
| 102419 | 193 | 35100 | 19203506-CITATION-101619 | | 5.00 | 10.00 | 11/06/19 |
| 102919 | 193 | 35100 | 19700711-CITATION-102119 | | 5.00 | 15.00 | 11/06/19 |
| 103119 | 193 | 35100 | 19700820-CITATION-102319 | | 5.00 | 20.00 | 11/06/19 |
| 110619 | 193 | 35100 | 19700869-CITATION-102919 | | 5.00 | 25.00 | 11/06/19 |
| 111319 | 193 | 35100 | 19700928-CITATION-110519 | | 10.00 | 35.00 | 12/02/19 |
| 111319 | 193 | 35100 | 19700916-CITATION-110519 | | 5.00 | 40.00 | 12/02/19 |
| 111419 | 193 | 35100 | 19203740-CITATION-110619 | | 5.00 | 45.00 | 12/02/19 |
| 112019 | 193 | 35100 | 19500992-CITATION-111219 | | 50.00 | 95.00 | 12/02/19 |
| 112119 | 193 | 35100 | 19501039-CITATION-111319 | | 5.00 | 100.00 | 12/02/19 |

Account: [redacted] EXT:
Name: CESCA, CHRIS

"FINANCE CHARGE" → LATE FEE

| Effect Date | Trm | Sub Code | Description | Amount | Balance | Bill Date |
|---|---|---|---|---|---|---|
| 112619 | 193 | 35100 | 19701192-CITATION-111819 | 50.00 | 150.00 | 12/02/19 |
| 120219 | 193 | 29794 | FINANCE CHARGE FY20 | 0.25 | 150.25 | 12/02/19 |
| 120219 | 193 | 35100 | 19501286-CITATION-112019 | 5.00 | 155.25 | 12/02/19 |
| 121119 | 193 | 35100 | 19701274-CITATION-120319 | 5.00 | 160.25 | 01/07/20 |
| 121119 | 193 | 35100 | 19701289-CITATION-120319 | 10.00 | 170.25 | 01/07/20 |
| 121219 | 193 | 35100 | 19501445-CITATION-120419 | 5.00 | 175.25 | 01/07/20 |
| 121619 | 193 | 35100 | 19501544-CITATION-120519 | 50.00 | 225.25 | 01/07/20 |
| 121719 | 193 | 35100 | 19701336-CITATION-120919 | 50.00 | 275.25 | 01/07/20 |
| 121919 | 193 | 35100 | 19701427-CITATION-121119 | 80.00 | 355.25 | 01/07/20 |
| 010320 | 201 | 04632 | HEALTH INSURANCE | 795.00 | 1,150.25 | 01/07/20 |
| 010320 | 201 | 04761 | UNIVERSITY FEES- SCHED T | 1,635.30 | 2,785.55 | 01/07/20 |
| 010320 | 201 | 08603 | HEALTH INSURANCE WAIVER | 611.00- | 2,174.55 | 01/07/20 |
| 010320 | 201 | 08605 | HEALTH INSURANCE WAIVER2 | 184.00- | 1,990.55 | 01/07/20 |
| 010320 | 201 | 16500 | MACOMB TUITION-UG | 5,124.60 | 7,115.15 | 01/07/20 |
| 010320 | 201 | 19500 | ISAC MAP CREDIT FY20 | 2,670.00- | 4,445.15 | 01/07/20 |
| 010320 | 201 | 87130 | PELL GRANT CREDIT FY20 | 3,098.00- | 1,347.15 | 01/07/20 |
| 010320 | 201 | 87508 | DIRECT 1 SUB 2ND DISB- SP20 | 2,721.00- | 1,373.85- | 01/07/20 |
| 010820 | 201 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 1,373.85 | 0.00 | 02/04/20 |
| 012220 | 201 | 35100 | 20500017-CITATION-011320 | 50.00 | 50.00 | 02/04/20 |
| 012320 | 201 | 35100 | 20700081-CITATION-011520 | 125.00 | 175.00 | 02/04/20 |
| 012420 | 201 | 35100 | 20500094-CITATION-011620 | 80.00 | 255.00 | 02/04/20 |
| 013020 | 201 | 35100 | 20500185-CITATION-012220 | 125.00 | 380.00 | 02/04/20 |
| 020320 | 201 | 35100 | 20500203-CITATION-012420 | 125.00 | 505.00 | 02/04/20 |
| 020520 | 201 | 35100 | 20500264-CITATION-012820 | 125.00 | 630.00 | 03/02/20 |
| 020620 | 201 | 35100 | 20500326-CITATION-012920 | 80.00 | 710.00 | 03/02/20 |
| 020720 | 201 | 35100 | 20500392-CITATION-013020 | 50.00 | 760.00 | 03/02/20 |
| 021420 | 201 | 35100 | 20200046-CITATION-020520 | 80.00 | 840.00 | 03/02/20 |
| 030220 | 201 | 29794 | FINANCE CHARGE FY20 | 5.05 | 845.05 | 03/02/20 |
| 043020 | 201 | 87152 | CARES-C19 | 2,200.00- | 1,354.95- | 05/14/20 |
| 050420 | 201 | 03113 | EMERGENCY FUNDS REFUND | 2,200.00 | 845.05 | 05/14/20 |
| 060420 | 202 | 29794 | FINANCE CHARGE FY20 | 8.45 | 853.50 | 06/04/20 |
| 070120 | 202 | 29795 | FINANCE CHARGE FY21 | 8.54 | 862.04 | 07/01/20 |
| 070720 | 202 | 99910 | STARS/ACH PAYMENT | 7,968.65- | 7,106.61- | 08/03/20 |
| 072420 | 202 | 03106 | REFUND DISBURSEMENT | 7,106.61 | 0.00 | 08/03/20 |
| 082020 | 203 | 17200 | MACOMB TUIT DIST & OUTREACH-UG | 854.10 | 854.10 | 09/08/20 |
| 082020 | 203 | 33934 | DISTANCE LEARNING CHARGE | 150.00 | 1,004.10 | 09/08/20 |
| 082420 | 203 | 04761 | UNIVERSITY FEES- SCHED T | 272.55 | 1,276.65 | 09/08/20 |
| 082420 | 203 | 16500 | MACOMB TUITION-UG | 854.10 | 2,130.75 | 09/08/20 |
| 090220 | 203 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 523.25 | 2,654.00 | 09/08/20 |
| 090220 | 203 | 19504 | ISAC MAP CREDIT FY21 | 1,068.00- | 1,586.00 | 09/08/20 |
| 090220 | 203 | 87127 | PELL GRANT CREDIT FY21 | 1,586.00- | 0.00 | 09/08/20 |
| 090320 | 203 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 2,721.00 | 2,721.00 | 09/08/20 |
| 090320 | 203 | 87401 | DIRECT 1 SUB 1ST DISB- FA20 | 2,721.00- | 0.00 | 09/08/20 |
| 090420 | 203 | 99910 | STARS/ACH PAYMENT | 3,253.30- | 3,253.30- | 09/08/20 |
| 092420 | 203 | 03106 | REFUND DISBURSEMENT | 3,253.30 | 0.00 | 10/01/20 |
| 102120 | 203 | 35100 | 20701464-CITATION-101320 | 5.00 | 5.00 | 11/09/20 |
| 011121 | 211 | 04761 | UNIVERSITY FEES- SCHED T | 545.10 | 550.10 | 01/11/21 |
| 011121 | 211 | 16500 | MACOMB TUITION-UG | 1,708.20 | 2,258.30 | 01/11/21 |
| 011121 | 211 | 19504 | ISAC MAP CREDIT FY21 | 1,068.00- | 1,190.30 | 01/11/21 |
| 011121 | 211 | 87127 | PELL GRANT CREDIT FY21 | 1,587.00- | 396.70- | 01/11/21 |
| 011221 | 211 | 87405 | DIRECT 1 SUB 2ND DISB- SP21 | 2,721.00- | 3,117.70- | 02/04/21 |
| 011921 | 211 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 3,117.70 | 0.00 | 02/04/21 |
| 020921 | 211 | 99910 | STARS/ACH PAYMENT | 3,253.30- | 3,253.30- | 03/01/21 |
| 022521 | 211 | 03106 | REFUND DISBURSEMENT | 3,253.30 | 0.00 | 03/01/21 |
| 040721 | 211 | 89960 | CARES II FIN AID | 1,000.00- | 1,000.00- | 06/09/21 |
| 040821 | 211 | 03106 | REFUND DISBURSEMENT | 1,000.00 | 0.00 | 06/09/21 |
| 052821 | 211 | 89960 | CARES II FIN AID | 1,000.00 | 1,000.00 | 06/09/21 |
| 060121 | 211 | 89960 | CARES II FIN AID | 1,000.00- | 0.00 | 06/09/21 |
| 060221 | 212 | 04632 | HEALTH INSURANCE | 265.00 | 265.00 | 06/09/21 |
| 060221 | 212 | 17200 | MACOMB TUIT DIST & OUTREACH-UG | 1,708.20 | 1,973.20 | 06/09/21 |
| 060221 | 212 | 33934 | DISTANCE LEARNING CHARGE | 300.00 | 2,273.20 | 06/09/21 |
| 060321 | 212 | 04636 | HEALTH INSURANCE | 265.00- | 2,008.20 | 06/09/21 |
| 060921 | 212 | 87129 | PELL GRANT SUMMER FY21 | 1,586.00- | 422.20 | 06/09/21 |
| 061421 | 212 | 70055 | TITLE IV WITHDRAWAL | 0.00 | 422.20 | 06/30/21 |
| 061521 | 212 | 04632 | HEALTH INSURANCE | 265.00- | 157.20 | 06/30/21 |
| 061521 | 212 | 17200 | MACOMB TUIT DIST & OUTREACH-UG | 1,708.20- | 1,551.00- | 06/30/21 |
| 061521 | 212 | 33934 | DISTANCE LEARNING CHARGE | 300.00- | 1,851.00- | 06/30/21 |
| 061521 | 212 | 87129 | PELL GRANT SUMMER FY21 | 1,586.00 | 265.00- | 06/30/21 |
| 061721 | 212 | 04636 | HEALTH INSURANCE | 265.00 | 0.00 | 06/30/21 |
| 080521 | 213 | 04632 | HEALTH INSURANCE | 795.00 | 795.00 | 08/12/21 |
| 080521 | 213 | 04761 | UNIVERSITY FEES- SCHED T | 817.65 | 1,612.65 | 08/12/21 |
| 080521 | 213 | 16500 | MACOMB TUITION-UG | 2,562.30 | 4,174.95 | 08/12/21 |

CHARGE

Account: [redacted] EXT:
Name: CESCA, CHRIS

| Effect Date | Trm | Sub Code | Description | Amount | Balance | Bill Date |
|---|---|---|---|---|---|---|
| 080521 | 213 | 19510 | ISAC MAP FY22 | 1,648.80- | 2,526.15 | 08/12/21 |
| 080521 | 213 | 87133 | PELL GRANT CREDIT FY22 | 2,435.00- | 91.15 | 08/12/21 |
| 080621 | 213 | 19510 | ISAC MAP FY22 | 1,648.80- | 1,557.65- | 08/12/21 |
| 080921 | 213 | 19510 | ISAC MAP FY22 | 3,297.60 | 1,739.95 | 08/12/21 |
| 080921 | 213 | 19513 | ISAC MAP CREDIT FY22 | 1,648.80- | 91.15 | 08/12/21 |
| 082021 | 213 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 143.80 | 234.95 | 09/08/21 |
| 082021 | 213 | 04761 | UNIVERSITY FEES- SCHED T | 272.55 | 507.50 | 09/08/21 |
| 082021 | 213 | 16500 | MACOMB TUITION-UG | 854.10 | 1,361.60 | 09/08/21 |
| 082021 | 213 | 19513 | ISAC MAP CREDIT FY22 | 549.60- | 812.00 | 09/08/21 |
| 082021 | 213 | 87133 | PELL GRANT CREDIT FY22 | 812.00- | 0.00 | 09/08/21 |
| 082321 | 213 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 795.00 | 795.00 | 09/08/21 |
| 082321 | 213 | 08603 | HEALTH INSURANCE WAIVER | 611.00- | 184.00 | 09/08/21 |
| 082321 | 213 | 08605 | HEALTH INSURANCE WAIVER2 | 184.00- | 0.00 | 09/08/21 |
| 082521 | 213 | 03105 | AUTOMATIC REFUND DISBURSEMENT | 2,721.00 | 2,721.00 | 09/08/21 |
| 082521 | 213 | 87551 | DIRECT 1 SUB 1ST DISB- FA21 | 2,721.00- | 0.00 | 09/08/21 |
| 090221 | 213 | 99910 | STARS/ACH PAYMENT | 6,301.60- | 6,301.60- | 09/08/21 |
| 091721 | 213 | 03106 | REFUND DISBURSEMENT | 6,301.60 | 0.00 | 11/08/21 |
| 110121 | 213 | 87154 | CARES III FIN AID-FY22 | 850.00- | 850.00- | 11/08/21 |
| 061421 | 222 | 70053 | WITHDRAWAL MEMO | 0.00 | 850.00- | 08/12/21 |

WAIVER

 **Chris Cesca <c-cesca@wiu.edu>**

---

**Notes from 1/10/22 appointment**

Exhibit 5

2 messages

---

**Eskridge, Monica** <mj-eskridge@wiu.edu> Mon, Jan 10, 15:58
To: Chris Cesca <c-cesca@wiu.edu>
Cc: Michele Aurand <mj-aurand@wiu.edu>, Financial Aid Western Illinois University <Financial-Aid@wiu.edu>

Hi Chris,

Here is a list of things that you asked me to go over in an email after your appointment today:

<u>Break down of classes you have left to complete(including those we signed up for today):</u>
Gen Ed classes left: Science Lab (signed up to take this spring semester BIOL 101)
LEJA major classes: 303, 306 (signed up to take this spring), 312 & 44X -these are in class classes left (as of right now, Myers is the only one that teaches LEJA 312 in person)
490 & 491 are the internship classes
497 is the senior survey that you will complete while you are on internship
ECON major classes: 325, 330, 331, 381, 470-these will be in class classes
487 or 494 or 496 (494 is the 3 hour internship that you said you wanted to do)
497 is the senior knowledge assessment for 0 credit hours

<u>Michele</u>-*Chris is wanting to confirm that he can be moved up in catalog to not have to take the ECON 331 again with Melkumian.
*Also, are you able to add him to Sadler's ECON 350 class for spring?

Chris is going to try to talk to Sadler about in person meetings even though both classes he is going to sign up for with him are online.

Chris is still in the process of trying to get the KIN 290 to count as his science lab. Chris-in looking back at this, I don't know that this would work anyway as the KIN 290 is a 3 hour class and the Science Lab requires 4 hours.

<u>Financial Aid</u>-Chris, I have copied them on this email so that they can address the following questions:
1. What is the difference in MAP, Pell & subsidized loans for him taking 3,9 or 12 hours?
2. He is concerned with not being able to pay to take LEJA 306 for a 3rd time...

Chris-my basic understanding is that you you need to pay for your current semester (or have balance under $1,500) to be able to register for the next semester. Therefore, you won't be kicked out of the LEJA 306 class. However, you won't be able to register for future classes until the current semester is paid for. I will again, go back to the Financial Aid office to have them explain how/how many retakes can be covered with aid money.

<u>Lastly, I'm attaching 3 WARD reports:</u>
The 1st one was done 2/5/20 and showed you would graduate in FL 21
The 2nd one was done 6/2/21 and showed you would graduate in SU22
The 3rd one was done today and has 2 options graduating SP24 or SU/FL23. This last option depends on how many courses you take each semester.

Please let me know if you have any other questions. Have a good evening.

Calendar appointment link: calendly.com/mj-eskridge
[Quoted text hidden]
20200205 WARD DP.pdf, 20210602 WARD DP.pdf, 20220110 CC WARD for appt.pdf

---

**Aurand, Michele** <mj-aurand@wiu.edu> **Tue, Jan 11, 08:40**
**To: Eskridge, Monica <mj-eskridge@wiu.edu>**
**Cc: Chris Cesca <c-cesca@wiu.edu>**

Hello Monica and Chris...

If we change Chris' catalog to 2021, here is what he would still need for his Economics major:

ECON 325 (currently registered for in SP22)
ECON 330
ECON 350
ECON 351
ECON 381
ECON 497
300/400 level ECON or DS course
300/400 level ECON or DS course

Before I send this request to the Registrar's Office, I just want to make sure that you double check his LEJA major and make sure there aren't any major changes from Fall 2018 to Fall 2021. I don't want any surprises later on. Also, I want to point out that any future Economics courses may or may not be offered in person. There is no guarantee that any of these required/elective classes will be in person, so please don't plan on that.

Finally, I can't get Chris into ECON 350 because that class is closed and there are other classes that he still needs/could take that are currently open. Chris, you could take any of the following that still have spots available: ECON 332, ECON 351, ECON 487.

Please advise me on whether or not we definitely want to change the catalog year to 2021. I will not put in that request until I hear back from you both to go ahead and do so.

Michele
**[Quoted text hidden]**

Exhibit 6

**Chris Cesca <c-cesca@wiu.edu>**

---

**Meeting**
6 messages

---

**Smith, John** <jw-smith@wiu.edu> Tue, Jan 21, 2020, 17:38
To: Chris Cesca <c-cesca@wiu.edu>, Mark Mossman <ma-mossman@wiu.edu>, McConnell, Brenda <bl-mcconnell1@wiu.edu>

Hello Chris,

I would like to meet with you on Friday 1/24 at 8 am in Sherman 321 to discuss parking. Please let me know if you are available for this meeting.

Best Regards,
John
[Quoted text hidden]

---

**Cesca, Chris** <c-cesca@wiu.edu> Fri, Jan 24, 2020, 07:00
To: Smith, John <jw-smith@wiu.edu>
Cc: Angela LaFrance <ad-lafrance@wiu.edu>, Mark Mossman <ma-mossman@wiu.edu>, McConnell, Brenda <bl-mcconnell1@wiu.edu>, William Polley <wj-polley@wiu.edu>

Dr. Smith,

Thank you for your patience in receiving this reply.

In general, I profoundly struggle with time management, especially in the current context of morning appointments. If you are amenable, I would much prefer an afternoon meeting.

Additionally, I would like to respectfully request that Ms. LaFrance and Dr. Polley (who I have CC'd to this email) be present for this meeting, as I have invested significant time and energy into apprising them of my concerns regarding parking and the disabled community at Western. It is my hope that they can serve as advocates for me in a meeting with a school administrator with whom I am heretofore unfamiliar.

Please let me know what works best for you.

Thank you,

Chris
[Quoted text hidden]

---

**Smith, John** <jw-smith@wiu.edu> Fri, Jan 24, 2020, 07:46

To: Cesca, Chris <c-cesca@wiu.edu>
Cc: Angela LaFrance <ad-lafrance@wiu.edu>, Mark Mossman <ma-mossman@wiu.edu>, McConnell, Brenda <bl-mcconnell1@wiu.edu>, William Polley <wj-polley@wiu.edu>

Good Morning Chris,

I will see what we can get scheduled for everyone in the next week or so.

Best,
John
[Quoted text hidden]

---

**Polley, William** <wj-polley@wiu.edu> Fri, Jan 24, 2020, 10:24
To: Cesca, Chris <c-cesca@wiu.edu>

Chris,

I am no longer an administrator at WIU and for a number of reasons it would not be appropriate for me to be involved in a meeting concerning legal or policy matters. I wish you the very best.

Bill
[Quoted text hidden]

---

**Cesca, Chris** <c-cesca@wiu.edu> Wed, Jan 29, 2020, 14:56
To: Polley, William <wj-polley@wiu.edu>

Dr. Polley,

Thank you for getting back to me. After seeing you this morning in the parking lot, I was reminded to reply to your most recent email.

As I hope you can understand and appreciate, I interpreted your response to me as ~~cowardly~~ ~~spineless~~ troubling. It occurs to me that someone of your academic stature, especially in the area of economics, has an intimate understanding of opportunity cost. To this effect, it had been my hope that our several hour meeting on November 14th, 2019, in which you at one point told me I had "sold [you]" on the notion of accommodation for students with disabilities at WIU, would have elicited some effective change. At a minimum, regardless of your recent ~~demotion~~ restructuring, it would be my hope that you could lend your November 14th, 2019 sentiments to this upcoming meeting to the effect of championing the disabled community at Western.

What I am now understanding, however, is that our conversation, and what trust I may have had in you to even discuss such matters, may have been built on sand, so to speak. It feels as if I am running out of reliable parties to trust and depend on for advocacy and empathy at this struggling institution.

I don't know what to say except that the current culture of mediocrity behind the façade of "Recruitment and Retention!" at WIU is unacceptable.

Be better,

Chris
[Quoted text hidden]

---

**Polley, William** <wj-polley@wiu.edu>                                      Wed, Jan 29, 2020, 15:06
To: Cesca, Chris <c-cesca@wiu.edu>

If you would like to discuss this further, you can stop by my office.  I'm not sure how else to put it, but it is not appropriate for me to be involved in a meeting with the administration on legal or policy matters at this time.

If circumstances were different (and perhaps at a later time they will change), I would be happy to advocate on your behalf.  It's not that I don't want to.  It is that at this time I cannot.
[Quoted text hidden]

left voicemail Williams 3pt 9:30

Exhibit 7

Still waiting to be accepted.
Accepted 8/17.

WESTERN ILLINOIS UNIVERSITY

For Office Use Only
Date Received: 7/17/18

# ACCOMMODATION REQUEST FORM
# DISABILITY RESOURCE CENTER (DRC)

***This form should be completed by the student requesting accommodations.*** Please complete this form and return it to DRC, 143 Memorial Hall, 1 University Circle, Macomb, IL 61455, by fax at 309-298-2361, or email to disability@wiu.edu. If you have documentation about your disability or past use of accommodations, please send it, as well. You will be contacted by DRC staff approximately 1 week upon receipt of the completed Accommodation Request Form to schedule a welcome appointment. Accommodation requests for taking exams or note taking assistance received within 2 weeks of finals week will be processed for the following semester. Please note that the end of the semester is our busiest time at the DRC, but we will make all attempts to contact you as soon as possible.

## STUDENT INFORMATION

NAME CHRIS CESCA DATE OF BIRTH [redacted]

WIU STUDENT ID# [redacted]

CELL PHONE [redacted] HOME PHONE ____

WIU EMAIL ADDRESS ____

## STUDENT STATUS

Please indicate which of the following best describes your student status.

___FUTURE STUDENT-FRESHMAN (Semester & Year)____

✓ FUTURE STUDENT-TRANSFER (Semester & Year)____

___CURRENT WIU STUDENT (fr, soph, jr, sr, grad)____

MAJOR____

*Please continue to the next page.*

# DISABILITY INFORMATION

DIAGNOSIS(ES): ADD/ADHD

BRIEFLY DESCRIBE THE DIFFICULTIES YOU MAY HAVE OR ARE HAVING AT WIU THAT ARE RELATED TO YOUR DISABILITY:

I HAVE DIFFICULTY FOCUSING, NOTE TAKING, STAYING MOTIVATED ETC.

PLEASE LIST ACCOMMODATIONS YOU ARE SEEKING:

TUTORING, PEER MENTORING, NOTE TAKING ASSISTANCE

HAVE YOU RECEIVED DISABILITY RELATED ACCOMMODATIONS OR SERVICES IN ELEMENTARY SCHOOL, HIGH SCHOOL OR AT ANOTHER HIGHER EDUCATION INSTITUTION?

☐ YES, WHERE? ______ ☑ NO ☐ NOT SURE

DO YOU PLAN TO REQUEST DISABILITY-RELATED HOUSING ACCOMMODATIONS?

☐ YES ☐ NO ☑ NOT SURE

**NOTE:** *Information provided on this form will help the DRC work with you to determine appropriate academic adjustments and auxiliary aids and services. Your signature on this form indicates your desire to pursue services through the DRC and allows us to initiate a review of the requested adjustments.*

STUDENT SIGNATURE [redacted]

DATE 7/17/18

For Office Use Only

Assigned to: Eli

Type of Appointment (Phone or Face-to-Face): (to circled)

Appointment length: 1 hr

Notes: Week of 27 Aug

Self-Report Form Needed:

**Larry S. Wexler, Ph.D.**
**Licensed Clinical Psychologist**
**1550 Spring Road, Ste. 215**
**Oak Brook, IL 60523**

**Phone: 847-942-6612** **lswex@comcast.net**

February 24, 2020

RE: CHRISTOPHER CESCA

To Whom It May Concern:

I have been involved with Chris in both individual and family psychotherapy since 2013.

Since that time, I have had abundant opportunity to observe and experience the severity of his chronic difficulties with executive functioning—planning, organization, controlling attention, time management, and self-restraint.

He was frequently late for appointments—not just with me. He constantly struggled to stay on track when carrying out tasks, given to distractibility and impulsive behavior. What would be routine and ordinary tasks for most were enormous challenges for Chris.

I referred Chris to a psychiatrist (Phillip Helding, D.O., Hinsdale, IL) who diagnosed him with severe Attention Deficit Disorder and prescribed appropriate medication. Obstacles to successful medication treatment presented themselves, many reflecting the same difficulties the medication was intended to ameliorate.

I am frankly quite surprised at the level of academic achievement he has shown at WIU, managing full-plus course loads and various appointments. The intensity of his struggle is genuine. He is determined to succeed and I believe the success he has shown so far is a result of his superior intellectual ability combined with that determination. However, the psychological cost for him is significant in the form of anxiety and distress.

I cannot speak to what sorts of accommodations the university should provide. What I can say is that Chris is trying to cope with a very real, and very debilitating, condition. I believe that his difficulties with time management are indeed aggravated by transportation and parking complications, and that these complications do in turn detract from his ability to focus academically. In that sense, any accommodations that can reasonably be afforded would likely prove beneficial.

If I can be of any further assistance, please feel free to contact me.

Sincerely,

Larry W. Wexler, Ph.D.

Chris C

# Students with Learning Disabilities or ADD/ADHD

Did your receive special education services in P-12? No

IEP. What accommodations and services did you receive?
N/A

504 Plan. What accommodations and services did you receive? N/A

Informal services. Please describe.

Have you ever received services at another college or university? If so, what? No

What accommodations worked best for you? N/A

Do you remember when you were first diagnosed? Struggled since 3rd grade
Diagnosed at 38

Who did the evaluation?
Psychiatrist – Dr. [illegible]

Have you been evaluated since then and by whom? No

Did anyone give you a formal name for the condition? Severe ADHD
also sleep apnea

Anxiety, 504 [illegible]

Do you have any other conditions that might affect you while you are here at the University? all of above

Are particular academic areas affected by your condition? everything

Do you struggle with reading? When reading: absolutely

Do you consider yourself a slow, average or fast reader?

Do you read your textbooks? word search

Do you understand what you read? generally no

Do you find yourself reading aloud or mouthing the words? yes

Do you recognize the words when you read them? yes

When re-reading, do you do it because you don't remember what you just read or because you don't understand what you just read? both

Do you have to look up the meanings of words when you read? periodically

Do you use your finger or other tool to follow the words when you are reading? no

Anything else you want to share about your experiences with reading? Don't like reading, it is overwhelming

Do you struggle with math? yes + no

When working with math problems:

Do you understand math reasoning concepts? sometimes

Do you have difficulty with calculation? sometimes

Does it take you a long time to work math problems? sometimes

How much college level math have you completed? - maybe 1 semester
How much high school math did you take? 4 years
How were your grades in math? poor
What types of accommodations or strategies help you to be successful in math?
- no accommodations, help from parents, tutors

Do you struggle with writing papers? absolutely
When writing papers:
Do you wait until the last minute? yes
Do you have trouble formulating ideas? - no
Do you have trouble with spelling? no
Do you have trouble with grammar and punctuation? no
Do you have difficulty with organization and flow of the paper? yes
What strategies do you use when writing papers? outline intro, supporting + conclusion
Do you have someone review your papers? NA

Do you struggle when taking tests? when not prepared, due to lack of resources
When taking tests:
Do you have difficulty finishing exams in the time allotted? when unprepared
If the rest of the class gets an hour for the exam, will an hour and a half be enough for you? if prepared
Are you distracted by other students in the room? sometimes
Are you able to take exams with a few other students who are not taking the same exam? suppose
Have you ever had exams read aloud to you or do you find yourself reading exam questions out loud? - No ✓yes
When you receive your exams back do you find that you've misread questions? yes
Do you have difficulty completing scantron forms/bubble sheets? No
Is your penmanship legible? yes
When writing answers to essay questions and you are well prepared, do you have difficulty formulating answers? No
When writing answers to essay questions, do you have difficulty with spelling, punctuation and/or grammar? No
Do you feel the need to take breaks during exams? No
If so, how do breaks help?
Do you perform to your knowledge and preparedness level on exams? yes

Do you take your own notes? When taking notes: Not really
Do you rely on powerpoint slides for guidance? No
Describe what happens if you don't have access to powerpoints? [illegible]
Does taking class notes help you to remember and understand course content? -
Do you have difficulty listening and taking notes at the same time? yes take [illegible]
Do you have difficulty copying what is written on the board? yes
Do you have difficulty understanding what to write down? yes
Do you miss pieces of the lecture because you are trying to take notes? yes

Do you have difficulty with listening to the lecture? yes
Does it help for you to sit in a certain location in the classroom? yes, front center
Does listening interfere with your note taking? yes
Do you find it difficult to pay attention in class? sometimes
Are you easily distracted? yes
Are you restless? yes

Do you have difficulty with organization? beyond
Is your room disorganized or become disorganized easily? yes
Do you have difficulty keeping appointments? yes
Do you complete assignments on time? generally no
Do you wait until the last minute to do assignments? yes
Are your class materials (notes, handouts, syllabus) kept neatly together in place that you can easily find them? no
What methods do you use to stay organized? Google Drive
How do you keep track of upcoming tests and assignment deadlines? try remember, check.

Has the way your condition affected you changed over time?
Been pretty consistent

Are there better or worse times of day?
Prefer night

Were there accommodations you requested that were turned down? N/A
Did they offer an alternative?
Do you know why they said no? N/A
Do you agree?

Did you receive accommodations on the SAT, ACT, LSAT, GRE, MCAT ...? NO

If so, What accommodations did you receive? N/A

Have you used any medications? Vivan[illegible] made me very jittery, extremely emotions, insomnia
Are you using any now? No
How do they help? Did not like it
Are they taken on a schedule or as needed?
Does your medication schedule affect when you should study or take classes? No

How many hours per week do you typically study?
30 hrs.

## ADHD: Accommodation Support Form

**NOTE:** *Please type or print your answers on this form.*

### Student Information

Student Name: CHRISTOPHER LESCA
Student ID Number: ____________
Campus Address: ____________
Local Phone Number: ____________
Date of Birth: ____________
Date of Evaluation: ____________

### Student's Presenting Concerns

Please check all that apply:

- ✓ Difficulty sustaining attention
- ✓ Issues with time management
- ✓ Difficulty finishing exams in the time allowed
- ✓ Difficulty finishing tasks/projects
- ✓ Lack of organizational skills
- ✓ Problems taking lecture notes
- ✓ Social difficulties
- __ Other ____________

### Diagnosis

Please check all that apply:

- __ Student was diagnosed with AD/HD in childhood
- ✓ There is no childhood diagnosis, but symptoms were present in childhood
- ✓ It is very likely that this student has AD/HD
- __ It is unlikely that this student's difficulties can be attributed to AD/HD

## Evaluation Tools

✓ [illegible] | [illegible]
✓ [illegible] | ✓ [illegible]
[illegible]

✓ Objective tests of sustained attention. Please list QbTest by Dr. Heldering

Tests of cognitive functioning. Please list

Please attach test scores. Include any interpretive summary along with standard scores and percentile ranks.

## Cognitive Deficits

This student has significant deficits in the following area(s)

✓ Attention/Concentration | Long term memory
✓ Executive Functioning | ✓ Working Memory

Other

## Impact of Cognitive Deficits

The cognitive deficits have the following impact on functioning in an academic setting. Please indicate to what degree this impacts the student (mild, moderate or severe)

✓ Often fails to give close attention to detail
✓ Difficulty sustaining attention
✓ Does not seem to listen when spoken to directly
✓ Difficulty in following through with tasks
✓ Disorganized and forgetful in daily activities
✓ Easily distracted by extraneous stimuli
__ Often blurts out answers before questions have been completed, interrupts others
__ Other

3

## Evidence of Impact

[illegible]

✓ [illegible] ✓ [illegible] ✓ [illegible]

## Measures Taken to Rule Out Alternative Causes

[illegible] other causes for this student's difficulties

[illegible] other possible reasons for this student's difficulties [illegible] chronic drug or alcohol use, poor study habits, etc.?

Chris was evaluated by a psychiatrist, Dr. Phillip Holding (Hinsdale) using objective measurements and medication. (TOVA TEST)

## Medication & Side Effects

Please list prescribed medications and any reported side effects

Vivanse prescribed but d/c'd due to side effects (jitteriness, emotional over[illegible])

4

## Recommendations for Accommodations/Referrals

✓ [illegible]

[illegible]

[illegible]

✓ [illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible] [illegible]

[illegible] [illegible]

[illegible] [illegible]

✓ deadline extension for some assignments

## Evaluator Information

Evaluator Name: LARRY S. WEXLER, PH.D.
Evaluator Title: LICENSED CLINICAL PSYCHOLOGIST
Evaluator Signature: [signature] PhD
Address: 1550 SPRING RD STE 215 OAK BROOK, IL 60523
Phone Number: 847-942-6617
Fax Number: 847-675-6686
Email Address: LSWEX@comcast.net



WESTERN ILLINOIS UNIVERSITY

# STUDENT DEVELOPMENT & SUCCESS CENTER (SDSC)

1 University Circle
Macomb, IL 61455-1390
Telephone: 309-298-1884
Fax: 309-298-2361

## RELEASE/DISCLOSURE AUTHORIZATION FORM

I authorize **SDSC** to **obtain** or **release** written or oral information about:

Student's name: VESCA CHRIS

**Last** **First** **MI**

Regarding: ☐ Evaluation ☐ Services ☐ Testing

To/From:

**Name of Person or Agency** John Smith - Interim VPSS

**Address (Number and Street)** __________

**City, State, Zip** __________

**Phone** __________

**Fax Number** __________

**Email Address** __________

We request this disclosure

☑ for obtaining documentation of a disability (visual, hearing, medical, psychological)

☐ for facilitating continuing education services

☑ for coordinating services

☑ for other reasons (specify) PARKING ACCOMMODATIONS

I understand information obtained or released by Student Development & Success Center will be used to assist with the provision of accommodations or services, and that this release will be valid for one year unless otherwise specified below:

______________________________________________

**Month** **Day** **Year**

X______________________________ X 012420

**Student's Signature** **Date**

X______________________________ X__________

**Witness' Signature** **Date**

**Notice to receiving agency or person** - Do not re-disclose this information.

Western Illinois University
Student Development & Success Center
1 University Circle
Macomb, IL 61455
Voice: 309-298-1884
Fax: 309-298-2361
Email: Disability@wiu.edu



WESTERN ILLINOIS UNIVERSITY

# STUDENT DEVELOPMENT & SUCCESS CENTER (SDSC)

1 University Circle
Macomb, IL 61455-1390
Telephone: 309-298-1884
Fax: 309-298-2361

## RELEASE/DISCLOSURE AUTHORIZATION FORM

I authorize **SDSC** to **obtain** or **release** written or oral information about:

Student's name: CESCA CHRIS

Last First MI

Regarding: ☑ Evaluation ☑ Services ☑ Testing

To/From:

**Name of Person or Agency** DR. MARK MOSSMAN

**Address (Number and Street)** WIU

**City, State, Zip**

**Phone**

**Fax Number**

**Email Address**

We request this disclosure

- ☐ for obtaining documentation of a disability (visual, hearing, medical, psychological)
- ☑ for facilitating continuing education services
- ☑ for coordinating services
- ☑ for other reasons (specify) CAMPUS CONCERNS

I understand information obtaineu or released by Student Developme. . & Success Center will be used to assist with the provision of accommodations or services, and that this release will be valid for one year unless otherwise specified below:

______________________________________________

**Month** **Day** **Year**

X______________________________ X 12/2/19

**Student's Signature** **Date**

X______________________________ X______________

**Witness' Signature** **Date**

****Notice to receiving agency or person** - Do not re-disclose this information.**

Western Illinois University
Student Development & Success Center
1 University Circle
Macomb, IL 61455
Voice: 309-298-1884
Fax: 309-298-2361
Email: Disability@wiu.edu



WESTERN ILLINOIS UNIVERSITY

# STUDENT DEVELOPMENT & SUCCESS CENTER (SDSC)

1 University Circle
Macomb, IL 61455-1390
Telephone: 309-298-1884
Fax: 309-298-2361

## RELEASE/DISCLOSURE AUTHORIZATION FORM

I authorize **SDSC** to **obtain** or **release** written or oral information about:

Student's name: CESCA CHRIS

Last First MI

Regarding: ☐ Evaluation ☑ Services ☐ Testing

To/From:

**Name of Person or Agency** WILLIAM POLLEY

**Address (Number and Street)** WIU VPAS

**City, State, Zip** MACOMB, IL 61455

**Phone** ________

**Fax Number** ________

**Email Address** ________

We request this disclosure

☐ for obtaining documentation of a disability (visual, hearing, medical, psychological)
☐ for facilitating continuing education services
☐ for coordinating services
☐ for other reasons (specify)________

I understand information obtained or released by Student Development & Success Center will be used to assist with the provision of accommodations or services, and that this release will be valid for one year unless otherwise specified below:

______________________________________________

**Month** **Day** **Year**

X______________________________ X 1/2/19

**Student's Signature** **Date**

X______________________________ X______________

**Witness' Signature** **Date**

****Notice to receiving agency or person** - Do not re-disclose this information.**

Western Illinois University
Student Development & Success Center
1 University Circle
Macomb, IL 61455
Voice: 309-298-1884
Fax: 309-298-2361
Email: Disability@wiu.edu



WESTERN ILLINOIS UNIVERSITY

# DISABILITY RESOURCE CENTER

1 University Circle
Macomb, IL 61455-1390
Telephone: 309-298-2512
Fax: 309-298-2361

## RELEASE/DISCLOSURE AUTHORIZATION FORM

I authorize **Disability Resource Center** to **obtain** or **release** written or oral information about:

Student's name: CESCA (Last) CHRIS (First) ____ (MI)

Regarding: ☐ Evaluation ☑ Services ☐ Testing

To/From: DIGGER OSTER
Name of Person or Agency

WIU
Person or Agency Address (Street, Apt. #, P.O. Box)

City ____ State ____ Zip ____

Telephone Number ____ Fax Number ____

We request this disclosure

☐ for obtaining documentation of a disability (visual, hearing, medical, psychological)
☑ for facilitating continuing education services
☑ for coordinating services
☐ for other reasons (specify)____

I understand information obtained or released by Disability Resource Center will be used to assist with the provision of accommodations or services, and I give consent for disclosure of this information valid until:

03 (Month) 18 (Day) 2020 (Year)

X [redacted] Student's Signature X 031819 Date

X ____ Witness' Signature X ____ Date

****Notice to receiving agency or person** - Do not re-disclose this information.**

Exhibit 8

**Chris Cesca <c-cesca@wiu.edu>**

---

**[uTech #7735] Accommodation app needed for student**

2 messages

---

**Matthew Clark via RT** <Support-g@wiu.edu> Sun, Sep 19, 2021, 17:16
Reply-To: <Support-g@wiu.edu>
To: <C-Cesca@wiu.edu>

uTech does not have access to this software or the ability to purchase it. If you need access, Office 365 allows voice to text capability: https://support.microsoft.com/en-us/topic/dictate-text-using-speech-recognition-05725ee2-ae2e-438f-847c-b80e754eb50b. Windows 10 also has some of this functionality:

https://support.microsoft.com/en-us/windows/use-voice-typing-to-talk-instead-of-type-on-your-pc-fec94565-c4bd-329d-e59a-af033fa5689f

https://support.microsoft.com/en-us/windows/use-voice-recognition-in-windows-10-83ff75bd-63eb-0b6c-18d4-6fae94050571

On Fri Sep 17 15:57:03 2021, nk125 wrote:

> Problem: Student is calling because the DRC referred him to uTech. Student needs a text to speech converter app called Speechify for his accommodations and was wondering if WIU has a free or discounted price on it. There are free versions similar that the student tried using but they do not support many websites like speechify does. There were no similar programs on Journey Ed that I saw

---

**disability@wiu.edu via RT** <Support-g@wiu.edu> Mon, Sep 20, 2021, 08:10
Reply-To: <Support-g@wiu.edu>
To: <C-Cesca@wiu.edu>

This is not related to any accommodations we provide. Students are responsible to providing their own software programs for additional access.

Angie

On Sun, Sep 19, 2021 at 5:16 PM Matthew Clark via RT <Support-g@wiu.edu> wrote:

> Ticket URL: https://rt.wiu.edu/Ticket/Display.html?id=7735

[Quoted text hidden]

Exhibit 9

Official Academic Transcript from:
WESTERN ILLINOIS UNIVERSITY
OFFICE OF THE REGISTRAR
1 UNIVERSITY CIRCLE
SHERMAN HALL 110
MACOMB, IL 61455-1390

TELEPHONE: 309-298-3102

Official Academic Transcript of:
CHRIS CESCA
Transcript Created: 21-Jan-2022

Document Type: THIRD-PARTY SECURE PDF

Intended Recipient:
CHRIS CESCA
[redacted]
MACOMB, IL 61455-1946

E-Mail: chriscrackdown1@gmail.com

Requested by:
CHRIS CESCA
[redacted]
MACOMB, IL 61455-1946

E-Mail: chriscrackdown1@gmail.com

Delivered by:
Parchment, LLC
Under Contract To:
WESTERN ILLINOIS UNIVERSITY
Order Number: 2AW722869- 1
Telephone: (847) 716-3005

Statement of Authenticity
This Official Academic Transcript in Portable Document Format (PDF) was requested by the individual identified above in compliance with the provisions of the Family Educational Rights and Privacy Act of 1974 as Amended and in conformance with the prescribed ordering procedures of Western Illinois University who has contracted with Parchment, LLC of Scottsdale, AZ for electronic delivery of Official Academic Transcripts in PDF form. You may verify the authenticity of our relationship with Western Illinois University by visiting their website at wi u.edu/registrar/transcripts.php.

Colleges and Universities
If you are an accredited post-secondary academic institution, please be advised that you are receiving this transcript as a "Third-Party" receiver. Since you are not registered to our Parchment Receive service, additional security provisions have been added to this document to prevent content copying or alteration. You also are not permitted to print the document without watermark protections or add notations to the document when saving to your student information system. Should you wish to receive future documents through our electronic networks without these additional security features, please register your institution at https://info.parchment.com/compare_receive.html.

Privacy and Other Information
This Official Academic Transcript is for delivery to the above-named "Intended Recipient". If you are not the "Intended Recipient", please notify the Office of the Registrar at Western Illinois University. You are not permitted to copy or alter this document. You may not forward this document or disclose its contents to any person or organization other than the "Intended Recipient" without the express written permission of the student. If this document is copied or printed, the words "PRINTED COPY" will appear in the replicated transcript image.

In the interest of security and privacy, we delete this Official Academic Transcript from our server 48 hours after it is initially downloaded excluding weekends and holidays. If a replacement is subsequently needed, the requesting party must order another transcript from Western Illinois University. If you have any questions about this document please contact Parchment Customer Service at (847) 716-3005. Our operators are available from 7:00 am to 7:00 pm Monday through Friday (Central Time).

NAME: CHRIS CESCA
STUDENT ID: [redacted]
BIRTHDAY: JANUARY 12

IL/FEDERAL CONSTITUTION REQUIREMENT: MET

MAJOR: LAW ENFORCEMENT AND JUSTICE ADMINISTRATION

PRINTED COPY

| Description | Dept | Crse | Gr | Hrs | R |
|---|---|---|---|---|---|
| ************************************************ | | | | | |
| HOLY CROSS COLLEGE | | | | | |
| SUMMER 2005 - SPRING 2006 | | | | | |
| SUMMER 2005 | | | | | |
| RDG & STUD SKLS | GEN | ELEC | | 3.0 | |
| | ENG | 180 | | 3.0 | |
| | PHIL | 120 | | 3.0 | |
| FALL 2005 | | | | | |
| | ECON | 232 | | 3.0 | E |
| CAP SEMINAR | GEN | ELEC | | 3.0 | |
| | MATH | 129 | | 0.0 | |
| | SPAN | 223 | | 3.0 | |
| | THEA | 172 | | 3.0 | |
| SPRING 2006 | | | | | |
| INTRO PHOTOG | IDT | ELEC | | 3.0 | |
| GEOL AMERICN SW | GEOL | ELEC | | 4.0 | |
| WORLD RELIGIONS | GEN | ELEC | | 3.0 | |
| | SPAN | 224 | | 3.0 | |
| **********************************31.0 | | | | | |
| ************************************************ | | | | | |
| UNIV OF MISSOURI-COLUMBIA | | | | | |
| FALL 2006 - FALL 2007 | | | | | |
| FALL 2006 | | | | | |
| | G H | 299 | | 1.0 | |
| ***********************************1.0 | | | | | |
| ************************************************ | | | | | |
| COLUMBIA COLLEGE | | | | | |
| SUMMER 2007 | | | | | |
| | GCOM | 212 | | 3.0 | |
| | THEA | 171 | | 3.0 | |
| ***********************************6.0 | | | | | |
| ************************************************ | | | | | |
| CITY CO CHGO-MALCOLM X | | | | | |
| SPRING 2011 - SUMMER 2016 | | | | | |
| SPRING 2016 | | | | | |
| | EM | 351 | | 4.0 | |
| | EM | 352 | | 4.0 | |
| SUMMER 2016 | | | | | |
| ANAT/PHYSIOLOGY | SCI | ELEC | | 4.0 | |
| **********************************12.0 | | | | | |
| ************************************************ | | | | | |
| COLLEGE OF DUPAGE | | | | | |
| SPRING 2013 | | | | | |
| 20TH CENT WRLD | HIST | ELEC | | 3.0 | |
| ***********************************3.0 | | | | | |

| Description | Dept | Crse | Gr | Hrs | R |
|---|---|---|---|---|---|
| FALL 2018 | | | | | |
| PRIN MICRO | ECON | 232 | A | 3 | I |
| SUR CRIM JUST | LEJA | 101 | A | 3 | |
| ANAT & PHYS I | KIN | 290 | D+ | 3 | |
| | HA | HE | HP | GPA | |
| TERM: | 9 | 9 | 27.99 | 3.110 | |
| SPRING 2019 | | | | | |
| COLLEGE WRIT II | ENG | 280 | A | 3 | |
| FIN HEALTH | FIN | 101 | A | 2 | |
| ECON GAME THRY | ECON | 445 | A | 3 | |
| CRIM SCN INVEST | LEJA | 255 | A | 3 | |
| STRESSMGT RELAX | KIN | 149 | A | 1 | |
| | HA | HE | HP | GPA | |
| TERM: | 12 | 12 | 48.00 | 4.000 | |
| SEMESTER HONORS | | | | | |
| SUMMER 2019 | | | | | |
| INTRO PUB SPKG | COMM | 241 | A | 3 | |
| INTRO TO THEA | THEA | 110 | A | 3 | |
| DIV ETHICS PROF | LEJA | 345 | A | 3 | |
| | HA | HE | HP | GPA | |

=== CONTINUED ON NEXT COLUMN ===

| Description | Dept | Crse | Gr | Hrs | R |
|---|---|---|---|---|---|
| TERM: | 9 | 9 | 36.00 | 4.000 | |
| SEMESTER HONORS | | | | | |
| FALL 2019 | | | | | |
| PRIN MACRO | ECON | 231 | A | 3 | |
| JUVENILE JUST | LEJA | 201 | A | 3 | |
| CRIMINAL LAW | LEJA | 212 | A | 3 | |
| MOD MATH FUNCT | MATH | 123 | B- | 3 | |
| AMER GOVT & POL | POLS | 122 | A | 3 | |
| | HA | HE | HP | GPA | |
| TERM: | 15 | 15 | 56.01 | 3.734 | |
| SEMESTER HONORS | | | | | |
| SPRING 2020 | | | | | |
| ECON PROB SOLVE | ECON | 381 | F | (3) | |
| CRIMINAL PROCED | LEJA | 312 | F | (3) | |
| GEN ELEM STAT | STAT | 171 | A | 3 | |
| QUAN TECH CJ | LEJA | 303 | F | (3) | |
| ORG ADM CRM JUS | LEJA | 306 | F | (3) | E |
| CRIME THEORIES | LEJA | 357 | A | 3 | |
| | HA | HE | HP | GPA | |
| TERM: | 15 | 6 | 24.00 | 1.600 | |
| FALL 2020 | | | | | |
| INTRO SOCIOLOGY | SOC | 100 | A | 3 | |
| PLAY ANALYSIS | THEA | 101 | A | 3 | |
| | HA | HE | HP | GPA | |
| TERM: | 6 | 6 | 24.00 | 4.000 | |
| SPRING 2021 | | | | | |
| PANDEMIC ECON | ECON | 496 | A | 3 | |
| INTL MONEY ECON | ECON | 471 | A | 3 | |
| | HA | HE | HP | GPA | |
| TERM: | 6 | 6 | 24.00 | 4.000 | |
| FALL 2021 | | | | | |
| INT MACRO EC TH | ECON | 331 | FW | (3) | |
| INTL TRADE | ECON | 470 | F | (3) | |
| ORG ADM CRM JUS | LEJA | 306 | FW | (3) | I |
| ENVIRO ECON | ECON | 430 | F | (3) | |
| SKILL DEVELOP | ECON | 197 | S | 0 | |
| | HA | HE | HP | GPA | |
| TERM: | 12 | 0 | 0.00 | 0.000 | |

| | AHE | HA | HE | HP | GPA |
|---|---|---|---|---|---|
| CUMULATIVE: | 116 | 84 | 63 | 240.00 | 2.857 |

=== END OF ACADEMIC TRANSCRIPT ===

CHRIS CESCA
220 NORTH SHERMAN AVENUE
MACOMB IL 61455-1946

WESTERN ILLINOIS UNIVERSITY

DATE ISSUED: 01/21/2022

PAGE 1 OF 1

PRINTED COPY

Joan Wilson, Interim Registrar

This transcript processed and delivered by Credentials' TranscriptsNetwork

WESTERN ILLINOIS UNIVERSITY
MACOMB, ILLINOIS 61455-1390

**WESTERN ILLINOIS UNIVERSITY**
Office of the Registrar
1 University Circle
Macomb, Illinois 61455-1390
Telephone: 309-298-1891
Fax: 309-298-2787
Email: R-Office@wiu.edu
wiu.edu/registrar

GENERAL INFORMATION

Western was founded in 1899 as a state normal school and became Western Illinois State Teachers College (1922), Western Illinois State College (1947), and Western Illinois University (1960).

ACCREDITATION
Western Illinois University is accredited by the North Central Association of Colleges and Secondary Schools and by the National Council for Accreditation of Teacher Education. In addition, various degree programs have been accredited and/or certified by their individual agencies.

WIU IDENTIFYING CODES

| | |
|---|---|
| FICE Code: | 001780 |
| ACT Code: | 1158 |
| SAT Code: | 1900 |
| CEEB Code: | 1900 |

SEMESTER CALENDAR
Effective with the Fall Term 1978, Western Illinois University changed from the quarter system to the semester system.
Traditional courses offered in the semester system are 16 weeks in length.
Summer Session courses are either 3, 4, 6, or 8 weeks. Irregularly scheduled courses are available throughout the academic year.

TRANSCRIPT
The official transcript is prepared by the Office of the Registrar and is a complete picture of the permanent academic record. All courses attempted and grades earned are reflected on the transcript.

RELEASE OF INFORMATION
Transcripts are sent at the request of the student and may not be released to other parties. The Family Educational Rights and Privacy Act of 1974 prohibits the release of this information without the student's written consent.

COURSE REPEATABILITY
Courses may be repeated for additional credit only if the catalog course description specifies that the course is repeatable.

RETAKING COURSES (Undergraduates prior to Fall 2011 and Graduates, except where Grade Replacement is noted)
If the initial attempt resulted in a failing grade, it is averaged with the subsequent grade for the course in the GPA calculation. If the initial attempt was a passing grade, only that grade is included in the GPA calculation.

GRADE REPLACEMENT (Effective Fall 2011 for Undergraduates and Fall 2014 for Graduates)
An "E" in the Grade Replacement (R) column indicates that the honor points and attempted hours for a course are *excluded* from the GPA calculation and the earned hours total. An "I" in that column indicates that the honor points and hours attempted are *included* in the GPA calculation and the earned hours total.

"NEW START" POLICY
WIU students with severe grade point deficiencies may apply for and be readmitted under the "New Start" Policy after an absence of three or more years. If granted, all grades earned prior to readmission are excluded from the new GPA computation. Readmission under this policy is printed on the face of the transcript.

ACADEMIC INFORMATION
All students are considered to be in good standing unless otherwise noted on the face of the transcript.

CREDITS, HONOR POINTS, AND GRADE POINT AVERAGE
WIU has used the 4-point scale since Fall Term 1959. Unless otherwise noted, the GPA shown is a cumulative average. Effective Fall 2010, + and – grades were added to the grade scheme for undergraduate coursework only. The grades below are assigned the corresponding Honor Point value for each credit hour earned:

| | | | |
|---|---|---|---|
| A...... | 4.00 Honor Points | C.......... | 2.00 Honor Points |
| A-..... | 3.67 Honor Points | C-.......... | 1.67 Honor Points |
| B+.... | 3.33 Honor Points | D+........ | 1.33 Honor Points |
| B...... | 3.00 Honor Points | D.......... | 1.00 Honor Points |
| B-..... | 2.67 Honor Points | D-....... . | 0.67 Honor Points |
| C+.... | 2.33 Honor Points | F.......... | 0.00 Honor Points |
| FN = | Failure – Never Attended | ............ | 0.00 Honor Points |
| FW = | Failure – Unofficial Withdrawal | ............ | 0.00 Honor Points |

AHE - All Hours Earned – includes total hours for credit earned at WIU, transfer credits, proficiency credit, advanced placement credit, CLEP, CEEB, military credit, etc.
HA - Hours Attempted – credits earned at WIU with grades of A through F
HE - Hours Earned – credits earned at WIU with grades of A through D-, S, P
HP - Honor Points – grade value for hours attempted at WIU

METHOD OF GPA CALCULATION
The GPA (grade point average) is calculated only from credits earned at Western. This average is obtained by dividing the total number of honor points (HP) by the hours attempted (HA). For courses retaken for grade replacement, only the honor points and hours attempted where there is an "I" in the R column are *included* in the GPA calculation. Term GPAs are adjusted to reflect grade replacements.

TRANSFER CREDIT
Grades for transfer credit are not listed or used in the calculation of Western's grade point average.

OTHER GRADE SYMBOLS
The following grade symbols do not affect the grade point calculation.

| | | |
|---|---|---|
| I | = | Incomplete |
| N | = | Never attended – no academic penalty |
| P | = | Passing – credit granted |
| S | = | Satisfactory – credit granted |
| U | = | Unsatisfactory |
| UX | = | Unsatisfactory Audit |
| W | = | Withdrawn – no academic penalty |
| X | = | Audit |

COURSE NUMBERING SYSTEM
Courses numbered from 000N to 099N are developmental and do not count toward graduation.
Courses 010 to 099 within Music Department are applied study and ensembles and count for undergraduate credit.
Courses numbered from 100 to 299 are for lower division undergraduate credit.
Courses numbered from 300 to 499 are for upper division undergraduate credit.
Courses numbered from 500 to 999 are for graduate credit.

COURSE NUMBER SUFFIXES
Some course numbers may have a letter suffix as follows:
B = Course taken to satisfy undergraduate and graduate requirements
G = Undergraduate course taken for graduate credit
H = Course taken for Honors credit
N = Non-credit course
S = Short Term Travel Study
U = Graduate course taken for undergraduate credit
W = Course taken to satisfy writing requirement
Y = First Year Experience
Z = First Year Experience – Satisfies writing requirement

This Academic Transcript from Western Illinois University located in Macomb, IL is being provided to you by Credentials Inc. Under provisions of, and subject to, the Family Educational Rights and Privacy Act of 1974, Credentials Inc. of Northfield, IL is acting on behalf of Western Illinois University in facilitating the delivery of academic transcripts from Western Illinois University to other colleges, universities and third parties using the Credentials' TranscriptsNetwork™.

This secure transcript has been delivered electronically by Credentials Inc. in a Portable Document Format (PDF) file. Please be aware that this layout may be slightly different in look than Western Illinois University's printed/mailed copy, however it will contain the identical academic information. Depending on the school and your capabilities, we also can deliver this file as an XML document or an EDI document. Any questions regarding the validity of the information you are receiving should be directed to: Office of the Registrar, Western Illinois University, 1 University Circle, Macomb, IL 61455-1390, Tel: (309) 298-1891.

Exhibit 10

Gmail

Chris Cesca <c-cesca@wiu.edu>

## Notice - Grade Will Be Replaced

<Registrar@wiu.edu> Tue, Jan 11, 01:52
To: <C-Cesca@wiu.edu>
Cc: <MJ-Eskridge@wiu.edu>

ID 919482839

CESCA, CHRIS,

Our records show you are enrolled in the following course(s) for Spring 2022:

LEJA 306

Your repeat of the above course(s) is subject to the *Repeating a Course for Grade Replacement* policy.

Under this policy:

1. A particular course may not be repeated more than two times. Any attempt to repeat a course beyond that limit will not result in credit or honor point replacement.
2. Credit and applicable honor points will be awarded only once, the final time a course is taken for grade replacement. Only the grade and accompanying credit for the most recent attempt - for better or worse will be used for the grade point average and credits earned.
3. All prior enrollments and grades will remain on the permanent academic record and will carry an indicator that the course was repeated.
4. Repeating a course for grade replacement will not retroactively alter any previously earned academic status (i.e., academic warning, probation, suspension, or dismissal).

This policy does not apply to courses that are deleted or withdrawn. Courses for which an "I" (Incomplete) has been assigned are not covered under this policy until an official grade has been recorded.

Note: You will be charged applicable tuition and fees. In some cases, your financial assistance may be affected. To review the policy, see Repeating a Course for Grade Replacement. Please check with your academic advisor if you have questions regarding repeating this course.

Sincerely,

Office of the Registrar

Western Illinois
University

Tuesday, January 11, 2022 01:52:17 SRG#SC# SCT106J JOB08248

Exhibit 11

**Chris Cesca <c-cesca@wiu.edu>**

---

## Conversation Follow Up

---

**Schuch, Justin** <jl-schuch@wiu.edu> Tue, Jan 18, 19:22
To: Chris Cesca <c-cesca@wiu.edu>

Chris,

Thank you for the discussion today.

I reached out to our Financial Affairs division and confirmed you do not meet the criteria for the one time aid as we discussed.

If you need any other clarification, Ketra Roselieb, Executive Director of Financial Affairs, can speak to the federal criteria of these dollars. She can be reached at km-roselieb@wiu.edu.

Thank you.
Justin

**Justin Schuch** | Executive Director of Retention Initiatives

Enrollment Management

Western Illinois University

Sherman Hall, 121 | 1 University Circle, Macomb, IL 61455