UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

CHRISTOPHER CESCA,                        )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )          Case No. 4:23-cv-04043-SLD-JEH
                                          )
WESTERN ILLINOIS UNIVERSITY               )
BOARD OF TRUSTEES & PRESIDENT             )
GUIYOU HUANG, in both their Individual    )
and Official Capacities,                  )
                                          )
          Defendants.                     )

ORDER

Defendants Dr. Guiyou Huang and Western Illinois University Board of Trustees

("Board") move to dismiss portions of Plaintiff Christopher Cesca's complaint.  Defs.' Partial

Mot. Dismiss, ECF No. 14.  Plaintiff opposes the motion.  Pl.'s Resp. Defs.' Partial Mot.

Dismiss, ECF No. 16.  For the reasons that follow, Defendants' motion is GRANTED IN PART

and DENIED IN PART.

**BACKGROUND[1]**

Plaintiff is a student with disabilities pursuing undergraduate degrees from Western

Illinois University ("WIU") in Law Enforcement & Justice Administration ("LEJA") and

Economics.  *See, e.g.*, Compl. ¶¶ 22, 46–67, 296, ECF No. 1.  He last enrolled for classes at WIU

during the Spring 2022 semester but is currently precluded from reenrolling due to outstanding

debts, which he argues were unfairly assessed.  *E.g.*, *id.* ¶¶ 52–53, 107–08.  His disabilities

include Attention-Deficit/Hyperactivity Disorder, a learning disability which "manifests as a

---

[1] Plaintiff's complaint is 117 pages, excluding exhibits.  Compl. 1–117, ECF No. 1.  As it did with its preliminary injunction order, Jan. 15, 2024 Order, ECF No. 26, the Court recites only the background information necessary to resolve Defendants' motion to dismiss.

severe reading comprehension deficit," executive functioning disorder, anxiety, depression, sleep apnea, Aspergers Syndrome, and Post-Traumatic Stress Disorder.  *E.g.*, *id.* ¶¶ 37, 46, 55–59, 61, 379, 387; Feb. 22, 2021 Letter from Larry S. Wexler to Guiyou Huang, Compl. Ex. 1, ECF No. 1-1 at 1–2; Accommodation Request Form Disability Resource Center (DRC), Compl. Ex. 7, ECF No. 1-1 at 24–40.  This constellation of disabilities limits his ability to read, learn, socialize, focus, and communicate, and causes him to struggle with deadlines and discerning important dates and tasks from written communications.  *E.g.*, Compl. ¶¶ 50, 57–61; *see also id.* ¶¶ 162–65, 444 (giving examples of how Plaintiff struggles with discerning and adhering to deadlines).

Plaintiff received accommodations for his disabilities from WIU via the Disability Resource Center—now known as the Student Development and Success Center ("SDSC"), *id.* ¶ 100—such as the use of his laptop to record class, extended time and semi-private rooms for tests and exams, and accompaniment by his service animal.  *Id.* ¶¶ 109, 177, 255, 267, 307, 349, 366, 508.  He describes these accommodations as boilerplate and insufficient to address his needs.  *E.g.*, *id.* ¶ 123.  Sufficient accommodations would include "verbal notice" of important information, consisting of being notified verbally, followed by emailed documentation, *id.* ¶¶ 129, 151, and strict enforcement of WIU's Misuse of Electronic Devices Policy ("Misuse Policy"), *id.* ¶¶ 265–67, 273–74, 320–23, 329–30.  Because SDSC did not provide these accommodations and others, he instead requested accommodations directly from his professors, instructors, and colleagues, appealing up the "chain of command" when his requests were denied.  *E.g.*, *id.* ¶¶ 124–28, 240–41.

Plaintiff met with both WIU Interim President Dr. Martin Abraham and WIU's current President, Dr. Huang, to discuss disability accommodations and disability discrimination at WIU.  *E.g.*, *id.* ¶¶ 388–92, 395–96.  He says that SDSC is not the final decisionmaker with

respect to accommodations and that Dr. Huang admitted that individual professors and instructors have final authority over whether accommodations will be granted, resulting in "no true, central authority" for accommodations, as well as arbitrary and capricious denials of his requests. *E.g.*, *id.* ¶¶ 110–20.  His requests are denied out of hand, and he is unable to appeal these decisions because no written reasons for denials are provided to him. *E.g.*, *id.* ¶ 262.

Plaintiff filed a complaint suing the Board and Dr. Huang "in both their Individual & Official Capacities," under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Fourteenth Amendment via 42 U.S.C. § 1983.  Compl. 1, 5.  Broadly, Counts I–IV allege that Defendants discriminated on the basis of disability in violation of both Title II of the ADA and the Rehabilitation Act.  Compl. ¶¶ 515–46.  More specifically, Count I alleges that Defendants failed to provide an interactive process for reasonable accommodations which effectively denied him such accommodations, *id.* ¶¶ 515–25, Count II alleges that Defendants used discriminatory criteria and methods of administration, *id.* ¶¶ 526–29, Count III alleges that Defendants created a hostile educational environment, *id.* ¶¶ 530–39, and Count IV alleges that Defendants interfered with Plaintiff's disability advocacy and retaliated against him, *id.* ¶¶ 540–46.  Count V asserts violations of the Fourteenth Amendment's guarantee of due process and invokes 42 U.S.C. § 1983 as its procedural vehicle. *Id.* ¶¶ 547–73.

Defendants move under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6) to dismiss: (1) Counts I–IV insofar as those counts assert individual-capacity claims against Dr. Huang and individual Board members under the ADA and Rehabilitation Act, Mem. Supp. Mot. Dismiss 7, ECF No. 15, (2) Counts I–V insofar as those counts assert official-capacity claims against Dr. Huang and individual Board members, *id.* at 7–8, (3) the ADA claims in Counts I–IV because

3

they are either barred by sovereign immunity or duplicative of the Rehabilitation Act claims, *id.* at 8–10, (4) Count V because Plaintiff failed to plausibly allege an interest protected under the Due Process Clause, *id.* at 3–7, and (5) Plaintiff's request for punitive damages, *id.* at 10. The Court previously denied Plaintiff's request for a preliminary injunction. Jan. 15, 2024 Order, ECF No. 26.

## DISCUSSION

I.   **Legal Standards**

A.   **Motion to Dismiss for Lack of Jurisdiction**

Defendants may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). "In the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff, but a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Id.* at 588–89 (quotation marks omitted).

B.   **Motion to Dismiss for Failure to State a Claim**

Defendants may also move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551

4

U.S. 89, 93 (2007)).  While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When deciding on a motion to dismiss, the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).  A "court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

If a court concludes that a claim should be dismissed, that court must also consider whether to grant leave to amend.  Leave to amend a complaint should be given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).  "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

## II.   Analysis

The Court begins by analyzing whether Plaintiff may assert individual-capacity claims against Defendants under the ADA and Rehabilitation Act.  The Court then conducts a similar inquiry with respect to the official-capacity claims against the Board members as individuals, Dr. Huang, and the Board as an entity.  The Court next considers whether Plaintiff has sufficiently alleged an interest which is protected under the Due Process Clause of the Fourteenth Amendment.  Finally, the Court considers whether Plaintiff may seek punitive damages.

### A.   Counts I–IV: Individual-Capacity Claims

The Court dismisses with prejudice Counts I–IV to the extent such counts are brought against Defendants in their individual capacities.  Defendants argue that it is unclear "whether Plaintiff is attempting to sue the Board of Trustees as an entity, or if Plaintiff is making claims against members of the Board of Trustees and [Dr. Huang] individually, in their individual and official capacities."  Mem. Supp. Mot. Dismiss 7.  The Court agrees.  The caption of Plaintiff's complaint lists as Defendants: "Western Illinois University Board of Trustees, & President Guiyou Huang, each in both their Individual & Official Capacities."  Compl. 1; Mem. Opp'n Mot. Dismiss 7, ECF No. 17.  This suggests that he is bringing claims against the Board and Dr. Huang in their individual capacities for all claims.  *See also* Mem. Opp'n Mot. Dismiss 10-11 ("Since the [c]omplaint names [Dr. Huang] as a Defendant in both his individual and organizational capacity, the references to 'Defendant' or 'President Huang,' include[] him in his individual capacity and do[] not exclude him in his individual capacity.").  But Plaintiff also makes a confusing statement that "the Board and [Dr. Huang] are sued in their individual capacities under 42 U.S.C. [§] 1983," *id.* at 7, implying that he is only suing them in their individual capacities for claims under section 1983, not the ADA or Rehabilitation Act.  In the

interest of completeness, however, the Court construes the complaint as asserting individual-capacity claims under the ADA and Rehabilitation Act against both Dr. Huang and Board members as individuals in Counts I–IV.

With that clarification in mind, the Court turns to Defendants' first arguments against the ADA and Rehabilitation Act claims: (1) that the individual-capacity claims must be dismissed because the ADA and Rehabilitation Act have been interpreted to preclude suits against officials in their individual capacities, Mem. Supp. Mot. Dismiss 7, and (2) the claims against individual Board members and Dr. Huang in Counts I–V "must be dismissed because Plaintiff does not allege any conduct by any individual Board member or the President that would violate the Fourteenth Amendment, the ADA or the Rehabilitation Act," *id.* at 7–8.

Plaintiff does not respond to Defendants' first argument with respect to Dr. Huang. As to the individual Board members, he acknowledges that the Board in its official capacity as an entity is the proper target but "make[s] the good faith argument that this does not insulate Board Members from responsibility when sued in their individual capacity, as here." Mem. Opp'n Mot. Dismiss 7–8. As to Defendant's second argument, he quotes from the complaint to demonstrate Dr. Huang's personal involvement in conduct relevant to Counts I–IV. *Id.* at 8–10. He cites principles of Illinois agency law and asks for an inference that the individual Board members were informed of the alleged misconduct by Dr. Huang—who reports to the Board—because Plaintiff gave Dr. Huang documentation of that misconduct. *Id.* at 11–13. Relying on another inference, he says that individual Board members "would then hav[e] a reason to know of the Plaintiff's concerns and [that] may have led to action or inaction on those concerns," justifying individual-capacity claims against those Board members for Counts I–V. *Id.* at 12. As to Counts I–IV, he relies on the inference that Dr. Huang told the individual Board members of his issues

and that they therefore "failed to train employees in ADA & Rehab Act rights under Counts I to IV, because the Board Members were included in their individual and official capacity," hoping discovery will further flesh out his claims. *Id.* at 13–14 (quotation marks omitted).

The Court finds that Defendants' first argument is sufficient to justify dismissal of the individual-capacity claims against Dr. Huang and the individual Board members asserted in Counts I–IV. "ADA claims against individual defendants in their individual capacity must fail because the Act authorizes suits only against public entities." *Brewer v. Wis. Bd. of Bar Examiners*, 270 F. App'x 418, 421 (7th Cir. 2008) (citing 42 U.S.C. §§ 12131–12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001)); *see also Doe Child ex rel. Doe v. Stark Cnty. Cmty. Unit Sch. Dist. #100*, No. 19-1215-MMM, 2019 WL 6702538, at *4 (C.D. Ill. Dec. 9, 2019); *Novak v. Bd. of Trs. of S. Ill. Univ.*, No. 12-cv-7-JPG, 2012 WL 5077649, at *8 (S.D. Ill. Oct. 18, 2012) ("The ADA does not allow individuals to be sued for monetary damages."). While doctrines like *Ex parte Young*, 209 U.S. 123 (1908), allow for claims seeking solely injunctive relief, *see Garrett*, 531 U.S. at 374 n.9, those claims must be official-capacity claims, not individual-capacity claims, *see Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912–13 (7th Cir. 2003) (holding that *Ex parte Young* authorizes "suits for prospective injunctive relief against state officials who . . . are sued in their official capacity" under Title II of the ADA), *superseded by statute on other grounds as stated in O.B. v. Norwood*, 838 F.3d 837, 843 (7th Cir. 2016).

Similarly, the Rehabilitation Act precludes claims against Defendants in their individual capacities. *See Brewer*, 270 F. App'x at 421 (citing 29 U.S.C. §§ 794, 794a; *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119–20 (7th Cir. 1997)). The Rehabilitation Act claims are

defective for an additional reason—the Rehabilitation Act is concerned with recipients of federal funds, 29 U.S.C. § 794(b), and the complaint is devoid of any allegations that Dr. Huang or any Board member received federal funds, *cf.* Compl. ¶ 75 (alleging WIU receives federal funds); *see Novak*, 2012 WL 5077649, at *3 ("Individual defendants, however, do not receive federal aid and thus cannot be liable under the Rehabilitation Act.").

It is unclear what Plaintiff meant with respect to his "good faith argument" that naming the Board as an entity does not preclude individual capacity suits against the Board members individually under the ADA and Rehabilitation Act. Mem. Opp'n Mot. Dismiss 7–8. The Court finds that much of Plaintiff's cited authority for this purported modification in the law is inapposite and does not alter its conclusion that the directly on-point and binding authority precludes individual capacity claims against individual Board members. Defendants point the Court to *Vukadinovich v. Board of School Trustees of Michigan City Area Schools*, No. S90-14, 1990 WL 258777, at *4 (N.D. Ind. July 25, 1990), where the court was faced with a similarly deficient complaint and an assertion that discovery would cure the issues with the plaintiff's individual-capacity claims against individual board members. Mem. Supp. Mot. Dismiss 8. The court noted that "[t]he defendants cannot answer a complaint which contains no allegations of personal involvement against individual board members," and that "[n]aming the remaining board members in the amended complaint's caption and opening paragraphs, without alleging individual conduct on their part, states no claim upon which relief can be granted." *Vukadinovich*, 1990 WL 258777, at *4.

Here, Plaintiff's complaint does not even name the individual Board members in the caption, let alone the body of the complaint. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) ("Naming and serving defendants is vital. How can one defend without first

becoming a party?").  Even if Plaintiff managed to persuade the Court that the ADA and

Rehabilitation Act should allow for individual-capacity claims in this context, these pleading

deficiencies would dictate that these claims be dismissed.  *See Vukadinovich*, 1990 WL 258777,

at *4; *see also Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998); *Johnson v. Wexford Health

Care Servs., Inc.*, No. 17-cv-1308-DRH, 2017 WL 6375775, at *4 (S.D. Ill. Dec. 12, 2017).

Plaintiff has not shown that the Court should disregard these settled principles of pleading and

discrimination law.

Counts I–IV are dismissed insofar as they are asserted against Defendants in their

individual capacities.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644

(7th Cir. 2015) (affirming dismissal of ADA and Rehabilitation Act claims asserted against the

defendants in their individual capacities).  Such dismissal is with prejudice, as no amendment

could cure these deficiencies.  *See Barry Aviation*, 377 F.3d at 687; *Boston v. Dart*, No. 14 CV

8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (dismissing with prejudice ADA and

Rehabilitation Act claims brought against a defendant in her individual capacity).

With an eye towards a potential amended complaint, the Court closes this section by

clarifying the interaction between the ADA, Rehabilitation Act, and 42 U.S.C. § 1983.  Spurred

by Defendants' second argument regarding whether the complaint sufficiently details personal

and actionable conduct by Dr. Huang and individual Board members to maintain Counts I–V

against them in their individual capacities, Plaintiff asserts that "[t]he Complaint does allege

actionable conduct under Counts I through IV by the Defendants individually."  Mem. Opp'n

Mot. Dismiss 7 (citing *Ex parte Young*, 209 U.S. 123 (1908); *Garrett*, 531 U.S. at 374 n.9; *Laro

v. New Hampshire*, 259 F.3d 1, 17 (1st Cir. 2001)).[2]  He also states that "the Board and the

---

[2] Footnote 9 of *Garrett* clarifies that while "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I [of the ADA]," the standards of the ADA may still be

President are sued in their individual capacities under 42 U.S.C. [§] 1983," *id.*, and then details

the complaint's allegations of conduct by Dr. Huang which allegedly violated the ADA and

Rehabilitation Act, per Counts I–IV, *id.* at 8–10.  The limits of using section 1983 in this context

bear clarification.

Section 1983 may not be used to restyle Plaintiff's claimed statutory violations.

"[Section] 1983 cannot be used to alter the categories of persons potentially liable in private

actions under the Rehabilitation Act or the Americans with Disabilities Act."  *Tri-Corp Hous.*

*Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016); *see also Stanek*, 783 F.3d at 644; *Sneed v.*

*City of Harvey*, 598 F. App'x 442, 446 n.1 (7th Cir. 2015).  "A claim under section 1983 requires

a violation of a federal right, but it cannot merely replicate a cause of action that exists under

some other statute."  *Keeling v. Lake Cnty.*, No. 23-cv-3442, 2024 WL 197210, at *6 (N.D. Ill.

Jan. 18, 2024); *see also Tate v. Dart*, No. 17 C 8888, 2019 WL 1200740, at *2–3 (N.D. Ill. Mar.

14, 2019) (holding that section 1983 could not be used "to hold the Defendants liable for

retaliation under the ADA, rather than bringing a direct claim for retaliation under the statute").

A plaintiff cannot use section 1983 to circumvent the detailed remedial scheme Congress created

for ADA and Rehabilitation Act claims.  *See Keeling*, 2024 WL 197210, at *6 ("There is no need

to bring a section 1983 claim about violating the ADA or the Rehabilitation Act when a plaintiff

can simply bring a claim under the ADA or the Rehabilitation Act.");  *Hale v. Pace*, No. 09 C

5131, 2011 WL 1303369, at *9 (N.D. Ill. Mar. 31, 2011) (allowing a section 1983 equal

protection claim to proceed but dismissing with prejudice a section 1983 claim based "solely on

a violation of the ADA and the Rehabilitation Act").

---

enforced "by private individuals in actions for injunctive relief under *Ex parte Young*."  *Garrett*, 531 U.S. at 374 n.9.
*Laro* applies *Garrett* to the Family Medical Leave Act, which is not at issue in this case.  *See Laro*, 259 F.3d at 17
(citing *Garrett*, 531 U.S. at 374 n.9).

### B.   Counts I–IV: Official-Capacity Claims

The Court now turns to the official-capacity claims in Counts I–IV.  The Court addresses three issues in this section: (1) whether the complaint asserts official-capacity claims under any theory against the individual Board members, (2) whether Plaintiff may pursue official-capacity claims under the ADA and Rehabilitation Act against Dr. Huang, and (3) whether the ADA claims against the Board as an entity are barred, either because (i) sovereign immunity prohibits such claims, or (ii) such claims are needlessly duplicative of the Rehabilitation Act claims.

#### 1.   Individual Board Members

Defendants note that the Board of Trustees as an entity "is the proper party to be sued when suing Western Illinois University."  Mem. Supp. Mot. Dismiss 7 (citing 110 ILCS 690/35-40 (2022)).  This implies that to the extent the complaint asserts official-capacity claims against individual Board members, such claims are improper and should be dismissed.  Plaintiff acknowledges the propriety of naming the Board itself as the suable entity but fails to clarify whether individual Board members are sued in their official capacities, in addition to being sued in their individual capacities.  *See* Mem. Opp'n Mot. Dismiss 7–8.

The Court concludes that Plaintiff is not asserting official-capacity claims against the individual Board members.  He refers to the Board as an "entity," *id.* at 7, 13, and states that the "Board as a unit is its organizational capacity," *id.* at 7.  He requested and received a waiver of the service of summons from the Board as an entity, not any individual Board member.  *See* Waiver of the Service of Summons, ECF No. 7.  His allegations refer to the Board as a singular entity.  *See, e.g.*, Compl. ¶ 522 (alleging illegal conduct on the part of "Defendant Western Illinois University Board of Directors").  Those references and Plaintiff's litigation-conduct are incompatible with suing individual Board members in their official capacities.  Even if he did

12

assert official-capacity claims against individual Board members, the claims would be dismissed as duplicative of the official-capacity claims against the Board.  *See infra* Section II.B.2.

### 2.  Dr. Huang

As with the potential official-capacity claims asserted against individual Board members, Defendants' statement that the Board is the properly suable entity implies that official-capacity claims against Dr. Huang should be dismissed.  Mem. Supp. Mot. Dismiss 7 (citing 110 ILCS 690/35-40 (2022)).  Official-capacity claims under both the ADA and Rehabilitation Act against persons employed by a state entity in their official capacity are generally construed as a suit against the entity itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Marx v. Richland Cnty.*, No. 15-cv-764-wmc, 2017 WL 11534778, at *2 (W.D. Wis. Apr. 4, 2017) ("The proper defendant for claims under the ADA and Rehabilitation Act is generally the relevant state agency or its director in his official capacity."); *cf. Curtis v. W. Ill. Univ.*, No. 3:17-cv-03179-SLD-JEH, 2019 WL 13280240, at *3 (C.D. Ill. Mar. 21, 2019) ("All the individual Defendants are employed by WIU, so any official capacity Title VII claims are against WIU."). The Board as an entity has the power to "sue and be sued," 110 ILCS 690/35-40 (2022), and is the proper target of the official-capacity portions of Counts I–IV.  The official capacity claims against Dr. Huang are "mere surplusage in light of the claim against the [Board]."  *See Vukadinovich*, 1990 WL 258777, at *4; *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012) (finding that a claim which named the director of a state agency in her official capacity was actually a suit "against the agency," and updating the case caption accordingly). Amendment is futile, so the official-capacity claims against Dr. Huang in Counts I–IV are dismissed with prejudice.  *See Barry Aviation*, 377 F.3d at 687.

13

### 3.  Board as Entity

All that remains of Plaintiff's ADA and Rehabilitation Act claims in Counts I–IV are the official-capacity claims asserted against the Board as an entity.  Defendants seek dismissal of the ADA claims because they are either: (1) barred by sovereign immunity, or (2) redundant of Plaintiff's Rehabilitation Act claims.  Mem. Supp. Mot. Dismiss 8–10.  The Court starts with the sovereign immunity argument.

But first, an initial question is whether Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) governs a motion to dismiss based on sovereign immunity.  Defendants do not always specify whether they are invoking Rule 12(b)(1) or Rule 12(b)(6) for a particular argument.  *Cf. id.* at 5 (specifying that certain assertions in Count V should be disregarded as conclusory allegations under Rule 12(b)(6)).  However, the implication of Defendants' choice to use "barred" regarding Plaintiff's ADA claims is that Defendants invoke Rule 12(b)(1) to advance the sovereign immunity argument.  In contrast to some other circuits, the Seventh Circuit does not consider sovereign immunity to be a jurisdictional bar.  *See Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 822 & n.3 (7th Cir. 2016).  Therefore, Defendants' motion must be analyzed under Rule 12(b)(6), not Rule 12(b)(1).  *See Harris v. Martinez*, No. 22-cv-00373, 2023 WL 3504930, at *3 (N.D. Ill. May 17, 2023); *Freeman v. Univ. of Ill. at Chi.*, No. 17 C 1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018).

### a.  Sovereign Immunity

Plaintiff's claims for monetary damages against the Board in its official capacity are essentially claims against Illinois as a state, and sovereign immunity is implicated by his ADA claims.  *See Davidson v. Bd. of Governors of State Colls. & Univs. for W. Ill. Univ.*, 920 F.2d 441, 442 (7th Cir. 1990) (stating that WIU was the State of Illinois for purposes of the Eleventh

Amendment); *Curtis*, 2019 WL 13280240, at *9 n.7 (citing *Davidson*, 920 F.2d at 442).

Defendants argue that because the constitutional violations asserted in Count V must be

dismissed—an initial premise with which the Court agrees, *see infra* Section II.C—the ADA

claims asserted in Counts I–IV against the Board as an entity must also be dismissed as barred by

sovereign immunity.  Mem. Supp. Mot. Dismiss 8–9.  Plaintiff responds that sovereign immunity

does not preclude him from seeking injunctive relief "against state officials in their

organizational capacities," Mem. Opp'n Mot. Dismiss 15 (citing *Kahani v. Purdue Univ.*, 813

F.2d 843, 844–45 (7th Cir. 1987)), and that the complaint's allegations of due process violations

alleging damages within his section 1983 claim "fall under [the ADA's] waiver of sovereign

immunity as authorized under § 5 of the Fourteenth Amendment," *id.* (citing 42 U.S.C. § 12202;

*Garrett*, 531 U.S. at 364).

The concept of sovereign immunity is embodied in the Eleventh Amendment, which has

been interpreted to mean "that the Constitution does not provide for federal jurisdiction over

suits against nonconsenting States."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).  Three

exceptions apply—a State is not immune if "(1) the suit seeks prospective equitable relief; (2)

Congress has abrogated the state's immunity from suit; or (3) the state has properly waived its

sovereign immunity and consented to suit in federal court."  *Rittenhouse v. Bd. of Trustees of S.*

*Ill. Univ.*, 628 F. Supp. 2d 887, 894 (S.D. Ill. 2008) (citing *MCI Telecomms. Corp. v. Ill. Com.*

*Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999)); *see also Quern v. Jordan*, 440 U.S. 332, 347

(1979) (discussing how direct claims for monetary damages against non-consenting States are

generally not allowed, but prospective equitable relief—even if it requires a State to expend its

funds to comply with such relief—may be permissible).

While Title II of the ADA and section 504 of the Rehabilitation Act are "functionally identical" for many purposes, *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), the sovereign-immunity analysis differs.  States may consent to a limited waiver of sovereign immunity as a condition of receiving federal funds.  *See, e.g.*, *Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002) (discussing "Congress's power under the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, to place conditions on the grant of federal funds").  "Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds."  *Jaros*, 684 F.3d at 672 n.5 (citing *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir.2000)).  Conversely, the ADA relies on Congressional abrogation of sovereign immunity.  *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").

"Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Garrett*, 531 U.S. at 363 (alteration in original) (quoting *Kimel*, 528 U.S. at 73); *see also Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000) (finding that 42 U.S.C. § 12202 is a clear statement of sovereign-immunity abrogation).  Section 5 of the Fourteenth Amendment gives Congress the authority to enact "appropriate legislation" to enforce the guarantees of section 1, such as due process.  U.S. Const. amend. XIV, § 5; *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provision of § 5 of the Fourteenth Amendment." (citation omitted)).  "Section 5 legislation is valid if it exhibits 'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that

16

end.'" *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)) *see also Garrett*, 531 U.S. at 372–74 (holding that Title I of the ADA was not a valid exercise of Congress's section 5 power); *accord Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945, 952 (7th Cir. 2000).  For Title II of the ADA, the Supreme Court stated that a district court's task is to assess:

> [O]n a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.

The Seventh Circuit has yet to apply *Georgia* to Title II claims against state universities.[3] District courts within the Seventh Circuit have addressed this issue in the university context but have reached different conclusions.[4]  Here, neither party meaningfully engages in the *Georgia* analysis.  Plaintiff does not even cite *Georgia*, Mem. Opp'n Mot. Dismiss 15, and Defendants flatly assert "that sovereign immunity does bar Plaintiff's ADA claims against WIU," without any further argument, Mem. Supp. Mot. Dismiss 9.  At this preliminary stage of litigation, the Court considers only the third prong of *Georgia*: whether Congress validly abrogated sovereign immunity with respect to disability discrimination in the context of public universities.  *See*

---

[3] The Seventh Circuit has discussed or mentioned *Georgia* in majority opinions mainly in the context of prisons, *see Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022); *Barrett v. Wallace*, 570 F. App'x 598, 600 n.1 (7th Cir. 2014); *Jaros*, 684 F.3d at 670; *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874–76 (7th Cir. 2006) (FMLA), but also access to the courts, *King v. Marion Cir. Ct.*, 868 F.3d 589, 593 (7th Cir. 2017), and bar examinations, *Brewer*, 270 F. App'x at 421.
[4] *Compare Turner v. Vincennes Univ.*, No. 3:17-cv-00044-RLY-MPB, 2019 WL 8266875, at *5–7 (S.D. Ind. Mar. 29, 2019) (holding that the defendant was not immune on summary judgment), *and Novak*, 2012 WL 5077649, at *4–8 (holding that the defendant was not immune on a motion to dismiss), *with Strahl v. Trs. of Purdue Univ.*, No. 4:07-cv-61-AS, 2009 WL 1085736, at *2 (N.D. Ind. Apr. 22, 2009) (holding that the defendant was immune on summary judgment), *Rittenhouse*, 628 F. Supp. 2d at 894–95 (holding that the defendant was immune on a motion to dismiss), *and Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 937–41 (N.D. Ill. 2006)) (holding that the defendant was immune on a motion to dismiss).

17

*Turner v. Vincennes Univ.*, No. 3:17-cv-00044-RLY-MPB, 2019 WL 8266875, at *5–7 (S.D. Ind. Mar. 29, 2019) (adopting this approach at summary judgment); *Novak*, 2012 WL 5077649, at *4–8 (adopting this approach for a motion to dismiss).

Courts that find sovereign immunity bars claims for monetary damages under Title II of the ADA often do so because a university education is not a fundamental right, unlike the right of access to the courts. *See Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 939 (N.D. Ill. 2006); *Rittenhouse*, 628 F. Supp. 2d at 894. The Supreme Court found in *Lane* "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533–34. The Supreme Court noted that Congress had found "that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their disabilities," *id.* at 527, and that Title II was a congruent and proportional response to discrimination against people with disabilities regarding access to the courts, *id.* at 532. Some courts reason that because the right at issue is different in the university context, the abrogation outcome is different as well. *E.g.*, *Doe.*, 429 F. Supp. 2d at 939 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35–37 (1973)).

District courts within the Seventh Circuit that find sovereign immunity is not a bar to monetary damages under Title II of the ADA rely on the reasoning of other circuit courts of appeals that have applied *Georgia* or *City of Boerne* to the university context and found that Title II validly abrogates sovereign immunity.[5] *See, e.g.*, *Turner*, 2019 WL 8266875, at *7. For

---

[5] *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007); *Toledo v. Sanchez*, 454 F.3d 24, 39–40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 488–90 (4th Cir. 2005); *Assoc. for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005); *see also Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1032–36 (5th Cir. 2022) (applying the first prong of *Georgia* to a university student with ADHD claiming discrimination but not reaching the other prongs due to waiver issues below).

example, the First Circuit identified which constitutional rights were implicated by disability-discrimination in public education, such as the Equal Protection Clause's prohibition on "irrational disability discrimination," which precludes "states from relying on irrational fears and prejudice to discriminate against disabled students or to deny them reasonable accommodation." *Toledo v. Sanchez*, 454 F.3d 24, 36–37 (1st Cir. 2006) (quotation marks omitted); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 554 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) ("The right at issue in this case, as in *Lane*, is the right to be free from irrational disability discrimination."). Historically, people with disabilities were the subject of persistent discrimination in education. *See, e.g.*, *Toledo*, 454 F.3d at 37–39 ("[T]he thirty years preceding the enactment of the ADA evidence a widespread pattern of states unconstitutionally excluding disabled children from public education and irrationally discriminating against disabled students within schools."). The First Circuit noted that "Title II does impose a greater burden on states than the Fourteenth Amendment itself," but that the "ADA does not require public schools and universities to accommodate disabled students if the accommodation would substantially alter their programs or lower academic standards, and courts give due deference to the judgment of education officials on these matters." *Id.* at 39–40. Ultimately, the First Circuit concluded that the obligations imposed by Title II were "not disproportionate to the need to protect against the outright exclusion and irrational disability discrimination that such students experienced in the recent past." *Id.* at 40.

The Court is persuaded by the reasoning of cases like *Toledo* and concludes for purposes of Defendants' motion to dismiss that Plaintiff's Title II claims for monetary damages against the Board are not barred by sovereign immunity. If necessary, the Court may revisit this issue with the benefit of a more complete evidentiary record and appropriate briefing.

### b. Redundancy

Defendants encourage the Court to dispense with "the thorny question of sovereign immunity," because Plaintiff's ADA claims are "wholly redundant of Plaintiff's Section 504 claims."  Mem. Supp. Mot. Dismiss 9 (citing *Jaros*, 684 F.3d at 672).  Plaintiff responds that he should not be forced to pick between his remedies or causes of action at the pleading stage, and that he prefers the ADA claims because it is "the more modern Congressional expression of disability rights under law," is rooted in the Commerce Clause, and "has a broader statement of causation."  *Id.* at 14–15 (citing *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999)).

The Court discerns no practical difference between the Rehabilitation Act and ADA claims in this case.  Relief under the ADA and Rehabilitation Act is coextensive.  *Jaros*, 684 F.3d at 671.  The most obvious difference—the requirement that the Defendant accept federal funds—is satisfied here as Defendants admit that WIU is a covered entity under the ADA and Rehabilitation Act.  *See* Answer ¶ 75, ECF No. 18.  Further, Plaintiff's citation to a footnote in *Washington* regarding the differing standards of causation under the Rehabilitation Act and ADA is outdated—subsequent cases referencing *Washington* note that both statutes require but-for causation.  *See A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006)); *Wis. Cmty. Servs.*, 465 F.3d at 752 (citing *Washington*, 181 F.3d at 849).

But the Court already resolved the sovereign immunity question for now, so Defendants' practicalities-based argument to require Plaintiff to pick between the two statutes is unpersuasive.  Some courts faced with a plaintiff asserting claims under both the ADA and Rehabilitation Act choose to dismiss the ADA claims as the statutes are "functionally identical"

and relief under both is "coextensive," *see, e.g.*, *Wilson v. Dorty*, No. 20-cv-4111-MMM, 2020 WL 6274991, at *2 (C.D. Ill. Oct. 26, 2020), while others elect to allow the plaintiff to try his case as he would like, reminding the plaintiff that only one recovery is permitted, *see Willingham v. Graham Corr. Ctr.*, No. 14-cv-00912-MJR, 2014 WL 4627733, at *3 n.4 (S.D. Ill. Sept. 16, 2014); *Phelps v. Godinez*, No. 15-cv-073-SMY, 2015 WL 681007, at *5 (S.D. Ill. Feb. 17, 2015). At this early stage, the Court declines to dismiss the ADA claims as legally duplicative of the Rehabilitation Act claims.

In sum, the only ADA and Rehabilitation Act claims in Counts I–IV which are not dismissed with prejudice are those claims against the Board in its official capacity. To the extent the complaint asserts official capacity claims against individual Board members in Counts I–IV, those are dismissed with prejudice as well as they would be duplicative of official-capacity claims against the Board as an entity.

### C.  Count V: 42 U.S.C. § 1983 and Fourteenth Amendment Due Process

"Section 1983 allows a plaintiff to sue a 'person' who, acting under color of state law, has violated the plaintiff's constitutional rights." *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 535 (7th Cir. 2023) (quoting 42 U.S.C. § 1983). Plaintiff alleges that his constitutional rights were violated because Defendants deprived him of his "constitutional right to due process of law" under the Fourteenth Amendment. Compl. ¶¶ 547–73. Plaintiff does not specify whether he is pursuing a substantive or procedural due process claim. *See, e.g.*, *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772–75 (7th Cir. 2013) (analyzing both procedural and substantive due process claims in university context). Substantive due process claims may be based on "certain fundamental rights and liberty interests," *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (quoting *Washington v.*

*Glucksberg*, 521 U.S. 702, 720 (1997)), but those are rights like the right to marry, have children,

and bodily integrity, not the "right to follow any particular career," *id.*, nor even the "right to an

education generally," *Charleston*, 741 F.3d at 774 (citing *Rodriguez*, 411 U.S. at 35–37). If not

based on a fundamental right, a plaintiff may still pursue his procedural or substantive due

process claim, but then both types of claims require that the plaintiff adequately plead the

existence of a protected liberty or property interest. *See id.* at 772, 774; *Hess v. Bd. of Trs. of S.

Illinois Univ.* (*Hess II*), 839 F.3d 668, 677 (7th Cir. 2016) (finding that the plaintiff's

"substantive due-process claim, like his procedural claim, rests on the alleged deprivation of an

independent property or liberty interest"); *Khan v. Bland*, 630 F.3d 519, 527, 535 (7th Cir. 2010).

　　Plaintiff alleges that his property and liberty interests were deprived by Defendants

without "due process of law." *See* Compl. ¶ 560. Plaintiff states that his property interest stems

from an implied contract between himself and WIU and/or its agents, *id.* ¶¶ 552–55, and his

liberty interest from his right to "access to education at [WIU] as a state citizen and admitted

student," *id.* ¶¶ 556–58, as well as the "tangible continuing benefits of this liberty interest," such

as occupational prospects, *id.* ¶¶ 558, 572. Defendants argue that Plaintiff's complaint fails to

state a claim because he has failed to sufficiently "plead a protected property interest," Mem.

Supp. Mot. Dismiss 3–5, he has no liberty interest in a continued education at WIU, *id.* at 5–6,

and he has failed to sufficiently plead any harms to his occupational prospects, *id.* at 6.

　　Plaintiff stakes his opposition to Defendants' efforts to dismiss Count V solely on his

alleged property interest and does not respond to Defendants' arguments concerning the liberty

interest. *See* Mem. Opp'n Mot. Dismiss 7 ("[Defendants'] [m]otion's arguments about liberty

interests are moot since subject matter jurisdiction is satisfied. Further, these allegations are also

sufficient to state a cause of action under FRCP 12(b)(6). This is so whether or not any

22

allegations of constitutional violation of the Plaintiff's liberty interests are present." (citation

omitted)).  The Court briefly addresses the liberty interest before turning to the property interest.

### 1.  Liberty Interest

Plaintiff did not respond to Defendants' arguments regarding the liberty interest, so any

opposition is waived.  *See, e.g.*, *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th

Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people.  If they are

given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's

research and try to discover whether there might be something to say against the defendants'

reasoning."); *Diggs v. Lowe's Home Centers, LLC*, 21 C 4544, 2022 WL 3543496, at *2 (N.D.

Ill. Aug. 18, 2022) (collecting cases for the proposition that failing to respond to a plausible

argument for dismissal constitutes waiver).  The question is whether Defendants' arguments

supply a plausible reason to dismiss Count V as it relates to any alleged liberty interests.

Defendants argue that "[c]ourts have found that students do not have a liberty interest in

studying at a particular institution or in a particular academic program."  Mem. Supp. Mot.

Dismiss 5 (citing *Despard v. Bd. of Trs. of Ind. Univ.*, No. 1:14-cv-1987-WTL-DML, 2015 WL

4946112, at *3 (S.D. Ind. Aug. 18, 2015)).  Defendants argue that while "an individual has a

liberty interest in pursuing the occupation of his choice," such interest is sufficiently harmed to

trigger an entitlement to procedural due process only if the individual can show "(1) he was

stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed,

and (3) he suffered a tangible loss of other employment opportunities as a result of public

disclosure."  *Id.* at 6 (citing *Fenje v. Feld*, 398 F.3d 620, 627 (7th Cir. 2005); *Hess v. The Bd. of

Trs. of S. Ill. Univ.* (*Hess I*), 149 F. Supp. 3d 1027, 1039–40 (S.D. Ill. 2015), *aff'd sub nom. Hess

II*, 839 F.3d 668 (7th Cir. 2016); *Doe*, 429 F. Supp. 2d at 942–43).  Defendants note that Plaintiff

did not allege "that he was publicly defamed or stigmatized," nor that "because of any such statements he suffered a tangible loss of opportunity for education," nor that "any statement was made by Defendants to a potential prospective employer or to anyone unaffiliated with the University." *Id.*  Setting aside Defendants' extension of *Feld* to recognize a freestanding occupational-liberty interest—that case was concerned with the interests of public employees, not students, *see* 398 F.3d at 627—the Court finds that Defendants have supplied a plausible reason to dismiss Plaintiff's claim insofar as it relies upon a protected liberty interest, *see Kirksey*, 168 F.3d at 1041.  It is not certain from the face of the complaint that amendment would be futile, so such dismissal is without prejudice.  *See Barry Aviation*, 377 F.3d at 687.

## 2.   Property Interest

The first step in a property-based due process claim is to identify the property interest at issue.  *See Charleston*, 741 F.3d at 772 (procedural); *Khan*, 630 F.3d at 535 (substantive). "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," or public university materials.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78 (1972).  Students do not have "a stand-alone property interest in an education at a state university."  *Charleston*, 741 F.3d at 772.  Yet, because "the basic legal relation between a student and a private university or college is contractual in nature, a student may establish that an implied contract existed between himself and the university that entitled the student to a specific right."  *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009) (quotation marks omitted).  "The school's customs, conduct, and materials such as catalogs, bulletins, circulars, regulations, and other publications may support an implied contract and its terms—provided that they evidence an intent to be bound."  *Hernandez v. Ill. Inst. of Tech.*, 63

24

F.4th 661, 667 (7th Cir. 2023) (quotation marks omitted).  But a student may not "merely state that such an implied contract existed," as "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return."  *Charleston*, 741 F.3d at 773.  A student "must establish that the contract entitled him to the specific right that the university allegedly took, 'such as the right to a continuing education or the right not to be suspended without good cause.'"  *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019) (quoting *Bissessur*, 581 F.3d at 601).

     Plaintiff claims that an implied contract existed between himself and WIU, citing a screenshot from WIU's website, class syllabi which are not attached to his complaint, a statement from Dr. Abraham that something "could be done" about a health insurance charge, promises regarding reasonable accommodations at WIU, and the Misuse Policy.  Mem. Opp'n Mot. Dismiss 4–6 (quotation marks omitted).[6]  He also points to allegations regarding how he received insufficient process for, *inter alia*, his requests for reasonable accommodations.  *Id.* at 6–7 (citing Compl. ¶¶ 565–66).  Defendants argue that the complaint "fails to identify the content of these documents or how they create an implied contract, including the specific promises made by those documents," and that Plaintiff's assertion of an implied contract is conclusory and must be disregarded.  Mem. Supp. Mot. Dismiss 5.  Because both parties were in

---

[6] Plaintiff states that "Exhibit 2 is replete with more allegations of specific promises made and breached by the instructors."  Mem. Opp'n Mot. Dismiss 5; *see also* Meeting with WIU President Dr. Martin Abraham: Opening Thoughts ("Opening Thoughts"), Compl. Ex. 2, ECF No. 1-1 at 3–9.  This document mostly consists of Plaintiff's demands for accommodation, criticisms of WIU, and complaints about how he was treated at a library, not promises from any WIU agents.  The only statements even approaching a promise that the Court can discern from this document is Plaintiff's assertion that Dr. Abraham did not live up to his statements regarding when he would reply to certain emails from Plaintiff.  Opening Thoughts 7–8.  Only one of the described email exchanges is attached to the complaint, wherein Dr. Abraham stated, "I hope to have this work completed by the end of the week and ask for your patience as I gather the needed information."  Oct. 1, 2019 Email from Martin Abraham to Chris Cesca, Compl. Ex. 15, ECF No. 1-2 at 18–21; Oct. 1, 2019 Email from Martin Abraham to Chris Cesca, Compl. Ex. 19, ECF No. 1-2 at 34–37 (reprinting the same email exchange).  The qualifier of "hope" plainly renders this statement an unenforceable promise.  *Cf. Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *7 (N.D. Ill. Feb. 4, 2019) ("Though a student handbook's expression of intention, hope or desire is unenforceable and does not become part of the student's contract with the school, specific promises do." (quotation marks omitted)).

Illinois when the alleged implied contracts were formed, *see* Compl. ¶¶ 46, 76, the Court looks to

cases applying Illinois contract law where necessary, *cf. Moss v. Martin*, 473 F.3d 694, 700 (7th

Cir. 2007) ("Because [the plaintiff] was employed in Illinois, we look to Illinois law to determine

whether he had a property interest in his employment with the [defendant].").

      Plaintiff's efforts to muster the source of the implied contract, the "exact promises" made

to him by WIU, the promises he made in return, and the contractual rights taken from him by

WIU are insufficient.  Start with Plaintiff's broadest assertion:

> [T]he catalogues, bulletins, circulars, promotions, and regulations of WIU,
> including the syllabus that creates a 'class contract' for each class, that it has made
> available to [Plaintiff] and that information he gleaned from its website [and]
> otherwise when he chose WIU as his undergraduate school and first enrolled in
> 2018 constitutes a promise, *inter alia*, that he could obtain a bachelor[']s degree in
> professional law enforcement and justice administration if he successfully
> completed the required coursework and paid tuition. Exhibit 3, WIU Website
> Screenshot - LEJA Promotion.

Compl. ¶ 495 (footnote omitted).  This assertion has some broad, intuitive appeal—the basic

bargain undergirding a university education is that a student in good standing who successfully

completes her coursework and pays her tuition will receive a degree.  *Cf. Sonoiki v. Harvard

Univ.*, 37 F.4th 691, 705 n.16 (1st Cir. 2022) (analyzing whether a student would understand that

university materials created a reasonable expectation that the university "might withhold their

degree once they had completed all of the required course requirements and were in good

financial standing with no disciplinary matters pending").

      But the document Plaintiff cites does not contain such a promise.  He provides only an

undated screenshot of the LEJA portion of WIU's website.  *See* LEJA Screenshot, Compl. Ex. 3,

ECF No. 1-1 at 12–15 (making statements such as "[d]iverse, academically qualified and

experienced faculty," and "2021 Best Bachelor's Degree in Law Enforcement: #3").  The

screenshot mentions available undergraduate degrees and Plaintiff alleges that WIU promised

that it would give him a degree if he completed his classes and paid tuition.  *See* Compl. ¶ 496

(asserting that he "relied on these promises when he applied to WIU" but only identifying the

previously described promise of degrees in exchange for tuition payments and completed

classes).  But he does not take the required next step of alleging that this screenshot created some

enforceable right, upon which WIU transgressed.  *See Malhotra*, 77 F.4th at 537 (finding that the

bare assertion that the plaintiff paid tuition was insufficient to plausibly allege an implied

contract).  The Court also cannot discern what portion of the screenshot is meant to exactly

promise a degree in exchange for completed classes and paid tuition.  More fundamentally,

"[p]romotional materials are not among the terms of the contract between universities and their

students."  *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D.

Ill. Feb. 4, 2019) (citing *DiPerna v. Chi. Sch. of Pro. Psych.*, 893 F.3d 1001, 1006–07 (7th Cir.

2018)).  Plaintiff's claimed source of an enforceable promise simply does not support his

argument.  *See Malhotra*, 77 F.4th at 537.

The Court next turns to Plaintiff's references to class syllabi as a "class contract."  *E.g.*,

Compl. ¶¶ 495, 495 n.52; *see also* Feb. 17, 2020 Email from Chris Cesca to Niyazi Ekici,

Compl. Ex. 22, ECF No. 1–2 at 44 (referring to "flagrant and brazen violations of the class

contract").  He does not attach a single class syllabus to his complaint and his allegations about

the contents of such syllabi are general and non-specific.  *See, e.g.*, Compl. ¶¶ 220 (alleging that

"there is always a thorough [and] detailed verbal review of the written ADA/Students with

Disabilities and Title IX rights statement that is recited at the beginning of the first class in each

course," without providing that statement or describing its contents); *id.* ¶ 341 (alleging that the

shift to online learning meant "[t]he format of class as advertised in the course catalogue and

syllabus when [Plaintiff] signed up no longer applied," without providing the course catalogue or

syllabus or describing their contents). Plaintiff does not identify the specific rights created by the course catalogs and class syllabi of which WIU deprived him, *see Purdue Univ.*, 928 F.3d at 660, nor even the promises made to him by those documents, *see Charleston*, 741 F.3d at 773 ("[The plaintiff] does not describe the specific promises that the university made to him through its disciplinary policy, nor does he identify these 'University Statutes' and their contents."). It is certainly possible that these materials could create an implied contract. *Cf. Hernandez*, 63 F.4th at 668. But under binding Seventh Circuit precedent, Plaintiff's allegations are not plausible as he fails to sufficiently connect the dots to put Defendants on notice of his implied contract.

The statements from Dr. Abraham cited by Plaintiff also do not constitute an implied contract. Plaintiff references a statement made by Dr. Abraham that something "could be done" about the health insurance charge that he incurred because he failed to opt out in time. *Id.* ¶¶ 393, 498.a (quotation marks omitted). Comparing the words "could" and "would" makes plain that Dr. Abraham's statement was not a promise. *See* Restatement (Second) of Contracts § 77 cmt. a (Am. L. Inst. 1981) ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). Plaintiff also fails to point out what promise or action he gave in return to induce this statement from Dr. Abraham. *See Bissessur*, 581 F.3d at 603–04 (affirming the dismissal of a due process claim based on an implied contract where the plaintiff failed to allege "what [he] promised in return"). Simply asserting that Dr. Abraham said something "could be done" is not enough.

Plaintiff is also too vague about the property interest created by WIU's "promise of reasonable accommodations." Mem. Opp'n Mot. Dismiss 5. If supported by appropriate allegations, the promise that qualified students with disabilities will receive reasonable accommodations could be sufficiently concrete to create a protected property interest. *See*

28

*Galligan*, 2019 WL 423356, at *7.  SDSC is the unit of WIU at least putatively responsible for

processing requests for accommodations.  *E.g.*, Compl. ¶¶ 109–10.  Plaintiff provides the intake

form for requesting accommodations from SDSC, *see* Accommodation Request Form Disability

Resource Center (DRC), but makes no other allegations regarding materials from SDSC which

could contain promises regarding accommodations.  He also acknowledges that he received at

least some accommodations from WIU, such as extra time on tests and note-taking assistance in

the form of allowing him to use his laptop or other device for notes and to record class, such that

he does not allege an outright denial of accommodations generally.  *E.g.*, Compl. ¶¶ 123, 267.

Instead, his allegations are directed to the process WIU has for accommodation requests.

He says that WIU's accommodations process is—in practice—an ad-hoc one and that Dr. Huang

admitted that individual professors and instructors have final authority over whether a given

accommodation request will be granted,[7] not SDSC.  *E.g.*, Compl. ¶¶ 110–11, 116 ("[T]he final

determination of [reasonable accommodations] beyond the boilerplate offerings has been yielded

to each individual instructor, teaching assistant, program staff person, and program authority

within WIU without the Defendant WIU President or the WIU Board of Trustees providing

effective oversight of these decisions, even when expressly requested by [Plaintiff] . . . .").

Setting aside that Plaintiff was the one who decided to go outside SDSC to request these

accommodations, *e.g.*, *id.* ¶¶ 123–29, these allegations amount to a complaint that WIU failed to

follow its established processes for accommodations, not allegations of substantive entitlements

created by implied contract.  The Seventh Circuit has "rejected similar claims of an interest in

contractually-guaranteed university process many times," and has held that "a plaintiff does not

---

[7] The Court remains skeptical about this allegation for the reasons stated in its preliminary injunction order, which were based on a video recording which Plaintiff did not submit to the Court until he moved for a preliminary injunction.  *See* Jan. 15, 2024 Order 5 n.4; Pl.'s Am. Mot. Prelim. Inj. 13, ECF No. 24 (listing additional exhibits).  But for a motion to dismiss, this allegation must be deemed true.  *See Phillips*, 714 F.3d at 1019.

have a federal constitutional right to state-mandated process." *Charleston*, 741 F.3d at 773 (quotation marks omitted). Plaintiff's allegations regarding WIU's ad-hoc process for processing requests for accommodation fail to establish a protected property interest.

The closest Plaintiff gets to alleging a protected property interest comes from his allegations regarding the Misuse Policy. In relevant part, the Misuse Policy states "[c]ellular phones, pagers, and other electronic devices may not be used in a manner that causes disruption in the classroom, library, or within college-owned or operated facilities." *Code of Student Conduct: Policy Statement I – Misuse of Electronic Devices*, Western Illinois University, https://www.wiu.edu/student_success/srrri/codeofconduct.php (last visited Feb. 9, 2024); Compl. ¶ 265 n.33 (directing the Court to this webpage). He says that WIU promised that students like himself would "be able to listen to and concentrate on classroom lectures without distractions from other students' laptops, cell phones, smart watches, etc.," but WIU has broken that promise by refusing to strictly enforce the Misuse Policy. *E.g.*, Compl. ¶¶ 320–23, 497–98.

There are two issues with treating the Misuse Policy as part of an implied contract creating a right to a distraction-free classroom. The first is that the Code of Student Conduct clearly disclaims an intent to be bound. *See Code of Student Conduct: C. General Provisions*, Western Illinois University, https://www.wiu.edu/student_success/srrri/codeofconduct.php (last visited Feb. 9, 2024) ("The provisions of the Code of Student Conduct are not to be regarded as a contract between the student and the University."); *Hernandez*, 63 F.4th at 667 (stating that materials may be part of an implied contract "provided that they evidence an intent to be bound"). The second is that Plaintiff overstates the entitlement created by the Misuse Policy. He claims that the Misuse Policy constitutes a promise of a classroom "without *distractions* from other students' laptops, cell phones, smart watches, etc.," Compl. ¶ 497 (emphasis added),

whereas the Misuse Policy speaks of "us[age] in a manner that causes *disruption*," *Code of Student Conduct: Policy Statement I – Misuse of Electronic Devices*, *supra* (emphasis added). Plaintiff rejects the notion that these devices may be used by other students without causing a disruption. *See* Compl. ¶ 329 ("When [Plaintiff] appealed to get enforcement of the Misuse of Electronic Devices Policy, the Chairperson of the LEJA program department, Jill Myers . . . contrived numerous speculative reasons why students would need to use electronics in class, contrary to WIU Policy."). Even viewing the facts in the light most favorable to him, Plaintiff's extreme interpretation of the right created by the Misuse Policy is unsupported by its plain language. The Misuse Policy does not create an enforceable right to be free from distraction.

Having found that none of Plaintiff's allegations are sufficient to demonstrate the existence of implied contractual rights which were denied by WIU without due process, the issue is whether Count V should be dismissed with or without prejudice. Amendment is not certainly futile with respect to Plaintiff's claimed property interest, and therefore the Court dismisses Count V without prejudice. *See Barry Aviation*, 377 F.3d at 687. Plaintiff may replead this claim, taking heed of the deficiencies identified by the Court regarding the sources of alleged promises and specific, enforceable rights created by such sources.

### D. Punitive Damages

The Court dismisses with prejudice Plaintiff's request for punitive damages, to the extent such request is based on violations of the Rehabilitation Act or Title II of the ADA. Plaintiff correctly notes that punitive damages are allowed under section 1983 in cases of recklessness. Mem. Opp'n Mot. Dismiss 14; *see also Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001). However, the Court has dismissed Plaintiff's section 1983 claim, and punitive damages "may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."

*Barnes*, 536 U.S. at 189.  Any amended complaint may not seek punitive damages based solely on ADA or Rehabilitation Act violations.

## CONCLUSION

Defendants' Partial Motion to Dismiss Plaintiff's Complaint, ECF No. 14, is GRANTED IN PART and DENIED IN PART.  The Court DISMISSES with prejudice Counts I–IV to the extent such counts are brought against Defendants in their individual capacities, against Dr. Huang in his official capacity, and against any individual Board of Trustees members in their official capacities.  The Court DISMISSES without prejudice Count V.  The Court DISMISSES with prejudice Plaintiff's request for punitive damages under Title II of the ADA and Rehabilitation Act.  The ADA and Rehabilitation Act claims in Counts I–IV asserted against the Board in its official capacity remain.  Plaintiff is given leave to file an amended complaint by March 1, 2024.

Entered this 9th day of February, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT
JUDGE
