E-FILED
Tuesday, 29 October, 2024 02:16:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CESCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-04043-SLD-JEH |
| | ) | |
| WESTERN ILLINOIS UNIVERSITY | ) | |
| BOARD OF TRUSTEES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Western Illinois University ("WIU") Board of Trustees'

Partial Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 34. For the

reasons that follow, the motion is GRANTED.

## BACKGROUND[1]

Plaintiff Christopher Cesca is a student with disabilities pursuing undergraduate degrees

from Western Illinois University in Law Enforcement & Justice Administration ("LEJA") and

Economics. He last enrolled for classes at WIU during the Spring 2022 semester but is currently

precluded from reenrolling due to outstanding debts, which he argues were unfairly assessed.

His disabilities include "autism, complex [Attention-Deficit/Hyperactivity Disorder], executive

function deficits, sleep apnea, executive function, a learning disability manifesting as a reading

comprehension deficit, & a communication deficit." FAC ¶ 7, ECF No. 31. This constellation

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the alleged factual background is drawn from Plaintiff's FAC, ECF No. 31. The Court recites only the factual allegations necessary to resolve the pending motion and presumes familiarity with the Court's previous orders in this case. *See generally* Jan. 15, 2024 Order, ECF No. 26 (denying Plaintiff's request for a preliminary injunction); Feb. 9, 2024 Order, ECF No. 28 (granting in part and denying in part the partial motion to dismiss Plaintiff's Complaint).

of disabilities limits his ability to read, learn, socialize, focus, and communicate, and causes him to struggle with deadlines and discerning important dates and tasks from written communications.  Plaintiff did well in some classes at WIU yet failed others—he attributes the varying performance to the difference in accommodations that were offered by his instructors in each class.

Plaintiff received accommodations for his disabilities from WIU via the Disability Resource Center—now known as the "Student Development and Success Center," *e.g.*, *id.* ¶ 99—such as the use of his laptop to record class, extended time and semi-private rooms for tests and exams, and accompaniment by his service animal.  He describes these accommodations as boilerplate and insufficient to address his needs.  He frequently requested other accommodations which he preferred, such as "verbal alerts," meaning "a simple sequence of verbal communication alerting [Plaintiff] in-person, then by video chat, then by phone call." Cesca Decl. 9–10, FAC Ex. 27, ECF No. 31-6 at 1–24.  Verbal alerts were intended to ensure that WIU "would provide [Plaintiff] a verbal alert to needed notifications & communication of its contents," thereby enabling Plaintiff to timely receive important information and to "ask further questions, if needed."  *Id.*  He also sought strict enforcement of WIU's Misuse of Electronic Devices Policy ("Misuse Policy") as an accommodation for his disabilities.  The Misuse Policy provides: "Cellular phones, pagers, and other electronic devices may not be used in a manner that causes disruption in the classroom, library, or within college-owned or operated facilities."  *See* Oct. 5, 2020 Email from Chris Cesca to Martin Abraham, FAC Ex. 14, ECF No. 31-5 at 7–13;[2] *see also* FAC ¶ 35 (alleging that the Misuse Policy is "intended to minimize

---

[2] For reasons that remain unclear, Plaintiff does not provide a copy of the Misuse Policy itself as part of the FAC and his response to Defendant's partial motion to dismiss never states the Misuse Policy's exact language.  *See generally* Resp. Mot. Dismiss FAC, ECF No. 37.  While the October 5, 2020 email's articulation of the Misuse Policy is hearsay, the Court may consider it on a motion to dismiss.  *See, e.g.*, *Lewis v. City of Chicago*, 235 F.

disruptions"). His requests for accommodations—frequently made directly to his instructors—were routinely ignored or denied, without any written explanation as to why his requested accommodations were unreasonable.

Plaintiff's original Complaint asserted claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Fourteenth Amendment via 42 U.S.C. § 1983. Compl. 1, 5, ECF No. 1. The Court dismissed the Fourteenth Amendment claim for failure to plausibly allege the existence of a constitutionally protected interest but gave him leave to file an amended version of that claim. *See* Feb. 9, 2024 Order 21–31, ECF No. 28. Plaintiff subsequently filed the FAC which repleaded the Fourteenth Amendment claim (Count VII) and added a claim for retaliation under the ADA, Rehabilitation Act, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/6-101(A) (Count VI).[3] FAC ¶¶ 268–96. Defendant moves to dismiss those two claims, *see* Mem. Supp. Partial Mot. Dismiss FAC 1, ECF No. 35,[4] and Plaintiff resists the motion, *see generally* Resp. Partial Mot. Dismiss FAC, ECF No. 37.

## DISCUSSION

### I.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934

---

Supp. 3d 1029, 1031 (N.D. Ill. 2016) (rejecting the argument that hearsay could not be considered as part of a Rule 12(b)(6) motion).

[3] The FAC has two counts which are labeled as Count IV, FAC ¶¶ 250–67, a retaliation claim labeled Count V, *id.* ¶¶ 268–74, no Count VI, and a due process claim labeled Count VII, *id.* ¶ 275–96. The Court adopts the parties' conventions for discussing these claims in their briefing and clarifies that the at-issue claim of retaliation is described as Count VI in this Order, despite the FAC labeling that claim as Count V. *See id.* ¶¶ 268–74.

[4] Defendant's supporting memorandum is unpaginated, so the Court uses the page numbers generated by CM/ECF.

(7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'"  *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'" are not sufficient to satisfy the plausibility standard.  *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

## II.    Analysis

### A.  Due Process

"Section 1983 allows a plaintiff to sue a 'person' who, acting under color of state law, has violated the plaintiff's constitutional rights."  *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 535 (7th Cir. 2023) (quoting 42 U.S.C. § 1983).  The Fourteenth Amendment protects against state-deprivation of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Due process claims may refer to substantive due process or procedural due process.  *See, e.g.*, *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 831–32 (7th Cir. 2012) (analyzing both procedural and substantive due process claims in the university context).  The FAC still does not specify whether Plaintiff is pursuing a claim for denial of substantive due process, procedural due process, or both.  *See* FAC ¶¶ 275–96.

4

"Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir.2003). There is not a fundamental right to an education generally, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35–37 (1973), nor a fundamental "right to follow any particular career," *Park*, 692 F.3d at 832. The rational-basis review applicable to claims for substantive due process violations based upon non-fundamental rights "presupposes that the individual has a property interest that the state can deprive him of." *Charleston v. Bd. of Trs of Univ. of Ill. at Chi.*, 741 F.3d 769, 774 (7th Cir. 2013). Similarly, a procedural due process claim requires a court to "identify the protected property or liberty interest at stake" before it "determine[s] what process is due under the circumstances." *Id.* at 772. As either category of claim requires plausible allegations of a protectable interest, the Court considers whether Plaintiff has sufficiently identified a protectable property or liberty interest.

### 1. Property Interest

The Court found that Plaintiff's original Complaint failed to plausibly allege "the existence of implied contractual rights which were denied by WIU without due process." Feb. 9, 2024 Order 24–31. Defendant asserts that "Plaintiff has narrowed his claim" to solely the Misuse Policy and Diversity, Equity, Inclusion and Anti Racism Commitment ("DEI Commitment") in the FAC and argues that those sources did not create protectable property interests. Mem. Supp. Partial Mot. Dismiss FAC 3–5. Plaintiff disputes that he has narrowed his claim, Resp. Partial Mot. Dismiss FAC ¶ 6, and argues that WIU's website, *id.* ¶¶ 19–27, the Misuse Policy, *id.* ¶¶ 28–39, statements regarding class attendance made by Professor Ekici, *id.* ¶¶ 40–43, and his financial aid package, *id.* ¶¶ 44–49, created protectable property interests.

5

The Seventh Circuit "has rejected the proposition that an individual has a stand-alone property interest in an education at a state university," instead directing courts to "ask whether the student has shown that he has a *legally protected entitlement* to his continued education at the university." *Charleston*, 741 F.3d at 772–73. "[A] student may establish that an implied contract existed between himself and the university that entitled the student to a specific right," and that right "can be a property interest subject to constitutional protection." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601–02 (7th Cir. 2009). But "it is not enough for a student to merely state that such an implied contract existed" as "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston*, 741 F.3d at 773. "The school's customs, conduct, and materials such as catalogs, bulletins, circulars, regulations, and other publications may support an implied contract and its terms—provided that they evidence an intent to be bound." *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (quotation marks omitted).

### a. WIU's Website

Plaintiff characterizes certain language from WIU's promotional websites as a promise, specifically WIU's statement that the LEJA program was "[a]vailable 100% online or in a traditional on-campus setting," May 6, 2024 WIU Website Screenshot, Resp. Partial Mot. Dismiss FAC Ex. 41, ECF No. 37-1 (emphasis omitted). Plaintiff alleges that in return, he promised "to abide by the rules and regulations of WIU by applying to and attending WIU, paying tuition, and incurring debt to continue in its LEJA Program there for several years." Resp. Partial Mot. Dismiss FAC ¶ 21. He argues that WIU did not uphold its end of the bargain

when it denied his preferred accommodations, *see id.* ¶¶ 22–23, such that he "could not access the LEJA coursework 100% of the time online or in a traditional on-campus setting," *id.* ¶ 24.

The FAC's allegations do not address the deficiencies that the Court identified in Plaintiff's previous attempt to rely on WIU's promotional websites to create a protectable property interest. *See* Feb. 9, 2024 Order 26–27. "Promotional materials are not among the terms of the contract between universities and their students." *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D. Ill. Feb. 4, 2019) (citing *DiPerna v. Chi. Sch. of Pro. Psych.*, 893 F.3d 1001, 1006–07 (7th Cir. 2018)). Plaintiff fails to identify how WIU's promotional website "evidence[d] an intent to be bound," *see Hernandez*, 63 F.4th at 667, and these sorts of advertisements "are not ordinarily intended or understood as offers to sell," *see* Restatement (Second) of Contracts § 26 cmt. b (Am. Law Inst. 1981). Even if the Court were to overlook these barriers, Plaintiff's reading of "[a]vailable 100% online or in a traditional on-campus setting" as promising to grant a student full access to the LEJA curriculum in the manner that he needs is untenably strained. The statement only communicates that the LEJA degree is offered in either an exclusively online format or a traditional on-campus—*i.e.*, in person—format. In other words, "100%" modifies "online," not "available." Plaintiff has failed to plausibly allege that WIU's website entitled him to a protectable and specific contractual right.

The Court notes that Plaintiff's attempt to rely on WIU's promotional website demonstrates a deeper and recurring issue with his Fourteenth Amendment claim. Plaintiff is not complaining that the LEJA program was wholly unavailable, in the sense that the servers had crashed, or that the buildings were locked. Instead, he takes issue with WIU's refusals to provide him certain accommodations, thereby impeding the "availability" of the LEJA program despite WIU's duty to comply with anti-discrimination law. *See* Resp. Partial Mot. Dismiss

FAC ¶¶ 22–24.  "A claim under section 1983 requires a violation of a federal right, but it cannot merely replicate a cause of action that exists under some other statute."  *Keeling v. Lake County*, No. 23-cv-3442, 2024 WL 197210, at *6 (N.D. Ill. Jan. 18, 2024).  "When a statute includes its own comprehensive enforcement scheme, 'that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under § 1983.'"  *Boston v. Dart*, No. 14 CV 8680, 2015 WL 4638044, at *4 (N.D. Ill. Aug. 4, 2015) (quoting *Alexander v. Chi. Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985)).

The ADA and Rehabilitation Act both include such a comprehensive enforcement scheme, *see Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016), as does the IHRA, *see Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 510 (N.D. Ill. 2012) (citing *Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985)).  The remedies which are available under Plaintiff's statutory claims are materially distinct from those available under section 1983.  For example, a plaintiff who succeeds on his section 1983 claim may potentially recover punitive damages, *see Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001), whereas a plaintiff who succeeds on his ADA or Rehabilitation Act claim may not, *see CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (citing *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002)); *see also* Feb. 9, 2024 Order 31–32 (dismissing Plaintiff's Complaint to the extent that it sought punitive damages for violations of the ADA or Rehabilitation Act).  Plaintiff's argument that WIU broke a constitutionally protected promise regarding the availability of the LEJA program when it denied his requests for accommodation is an improper attempt to constitutionalize his disability claims and circumvent those statutes' comprehensive remedial schemes.  He may not use section 1983 to alter Congress's will regarding which remedies are available to him if he succeeds on his statutory claims.

#### b. Misuse Policy

Next, Plaintiff asserts that the Misuse Policy—which provides that "[c]ellular phones, pagers, and other electronic devices may not be used in a manner that causes disruption in the classroom, library or within college-owned or operated facilities," *see* Oct. 5, 2020 Email from Chris Cesca to Martin Abraham—created a specific contractual right to a classroom with minimal distractions or disruptions, *see* Resp. Partial Mot. Dismiss FAC ¶¶ 8–13, 28–39.  In his declaration, Plaintiff states that he "was regularly distracted in class by a cacophonous symphony of flashing, beeping cell phones, smart watches, and laptops being used by fellow students." Cesca Decl. 10.  He would routinely request that his instructors strictly enforce the Misuse Policy to accommodate his disabilities but most refused to do so.  FAC ¶ 40.  The other students' devices prevented him from understanding lectures, and therefore "WIU discriminate[d] against students who need a distraction-minimized classroom to understand presentations during class" by failing to strictly enforce the Misuse Policy.  *Id.* ¶¶ 42–43.  Plaintiff complains that his instructors based their refusals to strictly enforce the Misuse Policy upon speculation as to why a student might need to use an electronic device during class, *see* Cesca Decl. 18, asserts that students instead routinely misuse electronic devices in class, *see* Resp. Partial Mot. Dismiss FAC ¶ 9 (describing "the common predilection of young college students to constantly surf the web for dating & celebrity gossip sites and trendy fashion shopping sites"), and argues that "if any student really needs use of an electronic device during class, he or she may apply for that accommodation . . . just like [he] did," *id.* ¶ 12 (emphasis removed).

Plaintiff argued the Misuse Policy created an enforceable right in response to the first motion to dismiss, and the Court found that it did not create a protectable contract right for two reasons: (1) Plaintiff alleged that the Misuse Policy was contained in WIU's Code of Student

Conduct, which clearly disclaimed an intent to be bound; and (2) the Misuse Policy did not give Plaintiff an entitlement to be free from distraction, as opposed to disruption. Feb. 9, 2024 Order 30–31. Defendant argues that Plaintiff has failed to remedy these deficiencies in his FAC. Mem. Supp. Partial Mot. Dismiss FAC 4–5.

Plaintiff attempts to address the Court's first reason by alleging that "[o]ne or more of [his] instructors . . . repeated the Misuse Policy within their syllabi for the courses he has taken," and that the Misuse Policy is contained within WIU's Student Handbook, FAC ¶¶ 36–37, but does not include any syllabi or the Student Handbook, nor describe how either source evidences an intent to be bound. As to the Court's second reason, Plaintiff's discussion of this right has become inconsistent—when attempting to correct Defendant's characterization of his claim he says that instructors needed to "*minimize disruptions*," *see* Resp. Partial Mot. Dismiss FAC ¶¶ 8–13, but he also still uses "distraction" when discussing the scope of his claimed contractual right, *see id.* ¶¶ 28–39. The Court reiterates that the Misuse Policy is concerned with disruptions, not distractions, *i.e.*, a student playing a YouTube video with speakers enabled, not silently scrolling Instagram. *See* Feb. 9, 2024 Order 30–31.

University instructors must make judgment calls about whether a particular student's device usage merits interrupting every other student's learning experience by halting a lecture to call out that behavior. Even with the understanding that Plaintiff wanted to minimize disruptions instead of distractions, his claim relies upon the premise that the Misuse Policy entitled him to require his instructors to decide whether a device was "used in a manner that cause[d] disruption" by reference to his peculiar sensitivities. Oct. 5, 2020 Email from Chris Cesca to Martin Abraham. Essentially, Plaintiff asserts that the Misuse Policy gave him a right to demand that his input tip the scales in favor of less time instructing and more time policing device usage.

This right to control an instructor's discretion to determine what constitutes a disruption does not plausibly flow from the language which Plaintiff has identified. Moreover, the promises which Plaintiff gave in return for strict enforcement of the Misuse Policy remain unalleged. To the extent that Plaintiff argues that it was unreasonable and discriminatory treatment for an instructor to refuse to change the structure of an educational program—namely the ratio of instruction to device-usage policing—to accommodate Plaintiff's disabilities, this argument again improperly attempts to constitutionalize his statutory claims of disability discrimination. *See Keeling*, 2024 WL 197210, at *6. Plaintiff has not plausibly alleged that the Misuse Policy entitled him to a protectable and specific contractual right.

### c. DEI Commitment

The FAC alleges that WIU's DEI Commitment—which states that WIU will "[e]nsure fair, equitable, and inclusive access to University facilities, programs, resources, and services," FAC ¶ 44 (quotation marks omitted)—was another right-creating promise, and that WIU "induces students to attend WIU as a university that will provide DEI for students with disabilities," *id.* ¶¶ 44–50. Plaintiff locates this promise in WIU's Student Handbook. *Id.* ¶ 45. Defendant argues that the DEI Commitment cannot be the basis of an implied contract because the DEI Commitment itself does not evidence an intent to be bound. Mem. Supp. Partial Mot. Dismiss FAC 5. Plaintiff does not respond to this argument. This lack of response means Plaintiff has waived his opposition to Defendant's argument, and the Court may dismiss a contractual claim based upon the DEI Commitment if Defendant's provided basis for doing so is plausible. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Diggs v. Lowe's Home Ctrs., LLC*, 21 C 4544, 2022 WL 3543496, at *2 (N.D. Ill. Aug. 18,

11

2022) (collecting cases for the proposition that failing to respond to a plausible argument for dismissal constitutes waiver).

It is unclear what specific contractual right the DEI Commitment supposedly creates. The DEI Commitment does not set enforceable quotas for maintaining a diverse student body, guarantee specific accommodations to advance the goal of equity, nor promise that students will have an enforceable right to a feeling of inclusion on campus. In other words, the DEI Commitment contains no specific promises and is at best a mere expression of hope or desire that does not evidence an intent to be bound. *Cf. Galligan*, 2019 WL 423356, at *7 ("Though a student handbook's expression of intention, hope or desire is unenforceable and does not become part of the student's contract with the school, specific promises do." (quotation marks omitted)). The Court finds that Defendant has provided a plausible basis to dismiss any due process claim premised on the DEI Commitment.

### d.  Professor Ekici's Attendance Policy

In his response to Defendant's partial motion to dismiss—but not the FAC—Plaintiff alleges that an email exchange demonstrates that he had a specific attendance arrangement with one of his instructors, Professor Niyazi Ekici. Resp. Partial Mot. Dismiss FAC ¶¶ 40–43. In an email to Plaintiff, Professor Ekici stated: "[I]t w[ould] not be fair to remove your attendance requirement for my class." Feb. 14, 2020 Email from Niyazi Ekici to Chris Cesca, FAC Ex. 22, ECF No. 31-5 at 44. He also stated that he would "continue working with [Plaintiff] on the points that [we]re not clear to [Plaintiff]," but that he "w[ould] not [be] entirely covering [his] lectures to [Plaintiff] in [his] office hours." *Id.* Beneath the body of his email, he clarified that Plaintiff's "office hours use to date [we]re counted towards [Plaintiff's] attendance." *Id.* A few days later, Plaintiff responded and reiterated his expectation that Professor Ekici would strictly

enforce the Misuse Policy to prevent "the flagrant and brazen violations of the class contract which precipitated [his] choice to have class with [Professor Ekici] one-on-one." Feb. 17, 2020 Email from Chris Cesca to Niyazi Ekici, FAC Ex. 22, ECF No. 31-5 at 44. Plaintiff also asked: "Alternatively, does your policy still stand that we are allowed to come at the beginning of class, sign in, and then leave?" *Id.* Plaintiff characterizes these emails as "showing Prof. Ekici's admissions of making promises to, then withholding those promises from the Plaintiff." Resp. Partial Mot. Dismiss FAC ¶ 40. He argues that one could reasonably infer "that Prof. Ekici made an exact promise to the Plaintiff that Prof. Ekici would excuse the Plaintiff from attending class in return for the Plaintiff to show up and sign the attendance sheet," and that he "made an additional exact promise to explain the course lecture material to the Plaintiff during his regular office hours." *Id.* ¶ 41.

To start, the FAC fails to describe "the exact promises the university made to the student" that the email revoking such an arrangement is supposed to establish. *See Charleston*, 741 F.3d at 773. Aside from a string citation of examples of "unreasonable" conduct, *see* FAC ¶ 79, the FAC does not mention this communication—let alone describe it as demonstrating an implied contract between Plaintiff and Defendant—such that it fails to give Defendant fair notice of his claim and its basis. *See Indep. Tr. Corp.*, 665 F.3d at 934. Plaintiff may not amend the FAC via his response to Defendant's motion to dismiss. *See, e.g.*, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." (quotation marks omitted)).

Even if the Court could allow Plaintiff to make new allegations via a response to a motion to dismiss, his requested inferences are contradicted by the cited emails. He asserts that

13

Professor Ekici promised to excuse Plaintiff's attendance requirement in exchange for a promise that he would show up to class and sign the attendance sheet before leaving. Resp. Partial Mot. Dismiss FAC ¶ 40. But Plaintiff's email describes the ability to sign in and leave without receiving unexcused absences as an independent, generally applicable policy, not a promise made by Professor Ekici in return for a promise made by Plaintiff to follow that policy by signing in and then leaving. *See* Feb. 17, 2020 Email from Chris Cesca to Niyazi Ekici ("[D]oes your policy still stand that *we* are allowed to come at the beginning of class, sign in, and then leave?" (emphasis added)). Plaintiff fails to identify any promise made in return for Professor Ekici agreeing to teach him course materials one-on-one in office hours.

The only inference about the purported bargaining between Professor Ekici and Plaintiff which can reasonably be drawn from Plaintiff's email is that attendance of office hours instead of class was proposed to placate his demands for strict policing of other students' behavior. *See id.* (noting that he had previously discussed with Professor Ekici "in the beginning of the semester" that it was "exceedingly difficult for [him] to focus when others are talking, and/or playing on their phones" and that such difficulty "precipitated [his] choice to have class with [Professor Ekici] one-on-one"). Finally, there is nothing to suggest that Professor Ekici intended in the unalleged conversations with Plaintiff to be bound to this generous arrangement of agreeing to teach the same material twice—once to the whole class, then a second time to Plaintiff in a one-on-one setting. *See* Feb. 14, 2020 Email from Niyazi Ekici to Chris Cesca (noting that requiring Plaintiff to attend class like the other students was intended "to be fair to myself and all other students"). The Court finds that Plaintiff has failed to plausibly allege an entitlement to skip class and require Professor Ekici to give the same lecture twice, *i.e.*, he has failed to allege that this email evidenced a protectable and specific contractual right.

14

### e. Financial Aid Package

Finally, Plaintiff asserts that WIU distributed financial aid to him "with the specific promise that if he maintained his eligibility, WIU would funnel financial aid to sustain the Plaintif [sic] in schooling costs plus some remainder for living expenses." Resp. Partial Mot. Dismiss FAC ¶ 44. He also describes himself as "a third-party beneficiary of the contract between the U.S. Dept. of Education and WIU." *Id.* ¶ 46. Setting aside whether the FAC describes with sufficient particularity the promises exchanged between Plaintiff, the Department of Education, and WIU to identify a protectable interest, this claim suffers from a more fundamental flaw: Plaintiff fails to plausibly allege that he upheld his end of the bargain by maintaining his eligibility, and therefore fails to plausibly allege that Defendant deprived him of his right to continue receiving financial aid without due process. *See Malhotra*, 77 F.4th at 537.

During the Spring 2022 semester, Plaintiff was told: "[Y]ou won't be able to register for future classes until the current semester is paid for." Jan. 10, 2022 Email from Monica Eskridge to Chris Cesca, FAC Ex. 5, ECF No. 31-2 at 4. In May 2023, his outstanding balance with WIU was turned over to a third-party collection agency. May 4, 2023 Email from WIU Billing Receivables, FAC Ex. 36, ECF No. 31-7 at 5. Therefore, under the status quo, WIU was faced with a straightforward chain of deductions: Plaintiff did not pay his outstanding debts, so he was not eligible to enroll in classes, so he was not eligible to receive financial aid. Based upon Plaintiff's scant descriptions of the relevant contracts, there was nothing constitutionally wrongful about WIU refusing him financial aid when he was not enrolled in classes. Plaintiff has failed to plausibly allege that WIU violated the Constitution when it did not give him financial aid to take classes for which he was ineligible to register.

Plaintiff's argument that he had a constitutionally protected interest in his financial aid package is another impermissible end-run around the limits of disability discrimination statutes. Plaintiff argues he was unfairly prevented from re-enrolling in classes due to disability discrimination. *See, e.g.*, FAC ¶ 4. He identifies many charges which he argues were unfairly assessed—whether because WIU unfairly made him retake classes which he failed due to insufficient accommodations, assessed parking fines despite his inability to understand parking signs and requests for parking accommodations, and/or communicated deadlines with financial consequences—specifically the deadline to opt out of a health insurance plan—solely via email despite his requests for verbal alerts. *See, e.g.*, FAC ¶¶ 83, 151–52. This is less a position that WIU breached its unspecified contracts with either Plaintiff or the Department of Education and more an argument that his nonperformance should be excused because it was caused by WIU's violations of the ADA, Rehabilitation Act, and/or IHRA. Whether he is entitled to an excuse for his inability to maintain his eligibility therefore turns on a favorable adjudication of his disability discrimination claims. In other words, he is not alleging "a constitutional violation that is separate and distinct from the alleged statutory violations," *Boston*, 2015 WL 4638044, at *4, but is instead seeking relief from a consequence of WIU's alleged statutory violations. Again, Plaintiff may not use section 1983 to restyle his statutory claims as constitutional claims with materially distinct remedial limits. *See Keeling*, 2024 WL 197210, at *6.[5]

In sum, Plaintiff has failed to plausibly allege that WIU, via its words or deeds, entered into an implied contract which gave Plaintiff a specific contractual right to which the protections

---

[5] Plaintiff also asserts that the funds which should have been disbursed to him via his financial aid package constitute a separate, standalone property interest, which he refers to as "unjust enrichment." *See* Resp. Partial Mot. Dismiss FAC ¶ 50 ("Another property right is unjust enrichment by WIU for which th [sic] FAC demands relief."). Plaintiff does not direct the Court to any authorities treating a state-common-law-based cause of action as a property interest which is independently protectable under federal constitutional law. *See id.* ¶¶ 50–52. Otherwise, this interest is indistinguishable from his interest in the financial aid package itself, and the Court likewise concludes that Plaintiff has failed to plausibly allege that WIU violated the Constitution by depriving him of this interest.

of the Due Process Clause applied. The FAC's allegations are insufficient to support a section 1983 claim based upon a property interest.

### 2. Liberty Interest

Plaintiff also asserts that he "has a liberty interest in access to education at [WIU] as a state citizen and admitted student at all times pertinent." FAC ¶ 289. The Court found that he had failed to respond, and therefore waived any opposition, to plausible arguments for dismissal of a liberty-interest-based claim in his original Complaint. Feb. 9, 2024 Order 23–24. Here, Defendant argues that "Plaintiff fail[s] to allege that he was publicly defamed or stigmatized, or that any statements by WIU caused him to suffer a tangible loss of opportunity for education." Mem. Supp. Partial Mot. Dismiss FAC 5–6; *see also id.* at 6 ("Generally, to evidence a loss of a liberty interest such that a plaintiff is entitled to procedural due process, Plaintiff must show that Defendants publicly made defamatory statements about him that led to a tangible loss of opportunity for employment or education."). Plaintiff demonstrates that he is aware of Defendant's arguments, *see* Resp. Partial Mot. Dismiss FAC ¶ 3 ("The [Partial Motion to Dismiss FAC]'s qualifier of 'generally' suggests there may be other cognizable liberty interests not challenged."),[6] but fails to respond on the merits to those arguments. Thus, the Court may dismiss any liberty-based due process claim if Defendant has provided a plausible basis to do so. *See Kirksey*, 168 F.3d at 1041; *Diggs*, 2022 WL 3543496, at *2.

Courts have assumed the existence of a liberty interest in a continued education for purposes of resolving a plaintiff's due process claim. *See Doe v. Univ. of S. Ind.*, No. 3:21-cv-00144-TWP-CSW, 2024 WL 1256039, at *13 (S.D. Ind. Mar. 25, 2024); *Despard v. Bd. of Trs.*

---

[6] To the extent that Plaintiff is suggesting that it is Defendant's burden to conjure up all conceivable liberty interests implicated by his allegations, he is wrong—the FAC must disclose the basis of his claim to give Defendant fair notice thereof. *See Indep. Tr. Corp.*, 665 F.3d at 934. Plaintiff identifies no other liberty interest besides "access to education at [WIU]," FAC ¶ 288, so the Court analyzes only that interest.

*of Ind. Univ.*, No. 1:14-cv-1987-WTL-DML, 2015 WL 4946112, at \*3 (S.D. Ind. Aug. 18,

2015); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82–85 (1978)

(assuming without deciding the existence of a liberty interest related to plaintiff's "opportunities

to continue her medical education or to return to employment in a medically related field").

Maintaining a claim based upon this interest requires a plaintiff to satisfy the stigma plus test,

meaning the plaintiff must "allege a change in legal status and state-inflicting reputational

damage." *Univ. of S. Ind.*, 2024 WL 1256039, at \*13; *see also Doe v. Purdue Univ.*, 928 F.3d

652, 661–63 (7th Cir. 2019) (finding that the plaintiff satisfied the stigma plus test where the

university's formal determination that the plaintiff was guilty of a sexual offense deprived him of

occupational liberty because it caused him to be expelled from a Navy ROTC program).

Here, the Court agrees that the FAC contains no allegations that WIU inflicted

reputational damage upon Plaintiff by publicly defaming him. However, the FAC notes that

Plaintiff felt embarrassed by WIU's actions, *see* FAC ¶¶ 83(i), 257, and alleges that an instructor

once moved his desk to the front of the class and ridiculed him after he had requested strict

enforcement of the Misuse Policy, *id.* ¶¶ 211–16, which could be stigmatizing conduct. Yet this

conduct is unaccompanied by any allegations that WIU's conduct led to a change to any legal

status for Plaintiff—mere embarrassment is not a constitutional harm. The FAC does not allege

that WIU took some action that altered his legal status to the point of preventing him from

continuing his education at WIU or elsewhere. The only thing preventing Plaintiff from

continuing to pursue an education is his own conduct, namely his refusal to pay his disputed

debts. Defendant has plausibly shown that the FAC's allegations are insufficient to maintain a

claim based upon the deprivation of an assumed liberty interest in a continued education.

Having concluded that Plaintiff has failed to plausibly allege a constitutional violation, the only remaining issue is whether Plaintiff should be given leave to file an amended version of his claim.  Leave to amend should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and a plaintiff ordinarily should be given a second chance to properly plead his claim, *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).  However, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).  Moreover, where a plaintiff fails to ask for leave to amend, a court need not grant such leave *sua sponte*.  *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006).

Here, Plaintiff has already been given his second chance to amend this claim and he failed to address many of the deficiencies which the Court previously identified.  *See* Feb. 9, 2024 Order 21–31.  The FAC sought to rely on substantially similar sources for his property interest and he again failed to engage in the merits of the arguments targeting his liberty interest. Many of his asserted interests amount to little more than attempts to dress up his statutory claims in constitutional clothes and circumvent those statutes' remedial schemes.   Moreover, as Plaintiff did not ask for leave to amend, *see* Resp. Partial Mot. Dismiss FAC ¶¶ 39, 43, 49, he has not explained how he would plead any differently.  Given this pattern of litigation, the Court declines to *sua sponte* offer Plaintiff the opportunity to amend his Fourteenth Amendment claim. Therefore, Count VII is DISMISSED WITH PREJUDICE.

### B.  Retaliation

Plaintiff alleges that WIU's agents retaliated against him for his disability advocacy, in violation of the ADA, Rehabilitation Act, and IHRA.  FAC ¶¶ 268–74.  The standards for assessing retaliation under each statute are materially identical.  *See, e.g.*, *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) ("Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework."); *Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006) (noting that the Seventh Circuit has held claims of retaliation under the Rehabilitation Act are "equivalent to the ADA").  To make out a claim of retaliation, a plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *see also Yates v. John Marshall L. Sch.*, No. 08 C 4127, 2008 WL 4358313, at *5 (N.D. Ill. Sept. 22, 2008) (applying this same test to a student's claim of retaliation in a non-employment context). Defendant acknowledges that Plaintiff's requests for accommodations for himself were protected activity, but questions whether he advocated for others, and describes his allegations of adverse actions and causal connection as conclusory and insufficient.  Mem. Supp. Partial Mot. Dismiss FAC 6–9.  Plaintiff responds that the opening statement he made in a meeting with WIU President Dr. Abraham and emails to LEJA faculty demonstrate that he advocated on behalf of other disabled persons.  Resp. Partial Mot. Dismiss FAC ¶¶ 53–54; *see also* Meeting WIU President Dr. Martin Abraham: Opening Thoughts 3, FAC Ex. 2, ECF No. 31-1 at 3–11 (detailing Plaintiff's goal of convincing Dr. Abraham that "there [we]re systemic problems campus-wide regarding . . . [r]ecognition of & respect for disabilities of all kinds").  As to the adverse action element, he points to Professor Ekici withdrawing the "accommodation" of

attending office hours instead of class and other instructors' denials of his requested accommodations. Resp. Partial Mot. Dismiss FAC ¶¶ 56–57 (citing FAC ¶¶ 217–18). He argues that causation is established by LEJA professors disparaging him in a conversation which he overheard. *Id.* ¶¶ 58–59; *see also* Aug. 23, 2021 Email from Chris Cesca to Jill Myers et al., FAC Ex. 24, ECF No. 31-5 at 46–47 (documenting that Plaintiff overheard his professors talking about him).

The Court need only address the adverse action point, as the denial of an accommodation cannot, as a matter of law, serve as the adverse action for a retaliation claim under the ADA. *See, e.g.*, *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) ("A 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim."); *see also id.* at 1037–38 (collecting cases). Plaintiff does not identify any other adverse actions, and the Court will not invent one on his behalf. Again, Plaintiff does not request leave to amend. *See* Resp. Partial Mot. Dismiss FAC ¶ 60. Therefore, Count VI is DISMISSED WITH PREJUDICE.

## CONCLUSION

Accordingly, Defendant Western Illinois University Board of Trustees' Partial Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 34, is GRANTED. Plaintiff's Count VI, retaliation, and Count VII, due process violations, are DISMISSED WITH PREJUDICE.

Entered this 29th day of October, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE